Smith v. Neilson.

W. S. Smith, Trustee, v. W. R. Neilson et al.

13ᴸ 461
14ᴸ 250

13L 461
f116  248
116   249
116   251

1. Wills, Foreign. *Will pass lands. When.* *Authentication* A foreign will, proved and recorded in the State of the testator's domicil according to the requirement of the laws of this State as prescribed by the Code, section 2182, will pass lands in this State as between the parties without record or registration here, and a copy of such will duly authenticated under the act of Congress will be evidence.

2. Mortgage. *Subsequent assignment.* A mortgage of the interest which the mortgagor has in land under an agreement to convey, although without any covenant of warranty, if duly registered, will prevail over a subsequent trust assignment to secure borrowed money with covenant of warranty, the grantor acquiring the legal title after both conveyances.

3. Lien. *Subrogation. Resulting trust.* The use of borrowed money for the purpose of paying off a lien on land will not, without more, give the lender a right to be subrogated to the lien, nor create in his favor a resulting trust.

4. Same. *Receiver. Rent.* A junior lien creditor who impounds the property by the appointment of a receiver will be entitled to the net proceeds of the rent until the older lien is properly enforced against the rent or the property.

FROM GREENE.

Appeal from the Chancery Court at Greeneville.  H. C. Smith, Ch.

H. H. Ingersoll for complainant.

J. P. Evans and Lucky & Yoe for defendants.

Cooper, J., delivered the opinion of the court.

Under an attachment bill filed in the year 1865 by one Scruggs against W. R. Neilson, the land of Neilson

was sold and bought by Scruggs. . Afterwards, under a similar attachment bill, one Evans had his debt against Neilson fixed upon the land, and was subrogated to the right of Scruggs. On January 1, 1868, Evans transferred his interest in the land to one Hancher. On October 22, 1868, Hancher sold the land, consisting of 519 acres, to Easterly for $7,868, and ex-executed to him a bond to make him a title upon payment of the purchase money. On the same day, Easterly and Neilson entered into a written agreement in which it is recited that they had agreed to become co-partners in the purchase of the land from Hancher on the terms of the title bond from Hancher to Easterly, that Neilson was to pay one-half of the purchase money by January 1, 1870, and to forfeit his interest in case of failure. On November 12, 1868, Easterly and one Bell entered into a written agreement by which Bell became an equal partner with Easterly in the purchase from Hancher, and "fully and equally bound" in the bond of Easterly to Neilson. At the time of these several transactions Neilson was living on the land, and by agreement his one-half of the land was set off to him by a division line, up to which he continued his possession. On December 25, 1869, Neilson borrowed from one Foster $2,400, for which he executed his note with his father-in-law, Wm. Smith, who lived in South Carolina, as his surety. The money was borrowed for the purpose of paying for his interest in the land, and was so applied. On the same day, in order to indemnify and save Smith harmless from loss by reason

of his said suretyship, Neilson conveyed to him in mortgage the land allotted to him by agreement with Easterly and Bell, describing it as about 260 acres, lying on Nolachucky river, in Greene county, Tennessee, adjoining the lands of certain persons named, "being the one-half of the original tract on which the said Neilson now resides, the same having been divided on the 8th of October last between himself and Bell and Easterly." This instrument was duly proved and registered in the following month of March. In January and February, 1870, Neilson paid on Easterly's note to Hancher, $2,965.61. This left a balance of about $1,200 on Neilson's share of the debt to Hancher, which was paid by Bell. On December 13, 1870. Hancher made a formal assignment or conveyance of his interest in the land to Easterly and Bell. On the 15th of the same month Easterly and Bell gave to Neilson their bond for title to his part of the land upon the payment of a note to Bell, due at twelve months from that date, for about $1,630. The consideration of this note consisted of the balance of purchase money due from Neilson for his part of the land, which had been paid by Bell, and a private or individual debt of Neilson to Bell not connected with the land. By assignment, this note came to the hands of one Winneford, who sued upon it, after its maturity, and recovered a judgment against Neilson for the amount, and afterwards subjected the land to the satisfaction thereof by bill based upon the vendor's lien. The land was sold subject to the equity of redemption, and bought by Winneford. A few

days before the expiration of the time of redemption, Neilson borrowed from William Harris and Temple Harris, for the express purpose of redeeming the land, $2,500, and all of the money except about $50, not required for the purpose, was so used, the lenders, through their lawyer, seeing to the proper application of the money. To secure this loan, on March 3, 1877, W. R. Neilson and his wife Mary J. Neilson, joined in a conveyance of the land to James P. Evans as trustee, in trust to secure the notes given for the money, and with power of sale in case of default. On March 13, 1877, Bell and Easterly, in compliance with their bond for title, conveyed the land to Neilson and wife by deed in fee. The note to the Harrises not being paid, the trustee, Evans, was proceeding to sell the land under the powers in the trust deed when he was enjoined by the original bill in this cause.

That bill was filed March, 1, 1879, by W. S. Smith, as testamentary trustee for Mary J. Neilson, the wife of W. R. Neilson, and her children, under the will of her father, Wm. Smith, against Neilson and wife, and their children, James P. Evans as trustee, and the two Harrises. The object of the bill was to set up a prior right to the land under the mortgage to Wm. Smith of December 25, 1869. Wm. Smith, as surety for Neilson on the note to Foster, had been compelled to pay the money. Wm. Smith died in 1874, in South Carolina, having first made a last will, which was duly proved and admitted to record in that State. By the sixth clause of his will he

devised and bequeathed to his son, W. S. Smith, the debt upon Neilson, secured by the mortgage, for the use and benefit of his daughter, the wife of Neilson, who was "to have the issues, increase and profits of said land in whatever shape it may assume, for and during her natural life," and at her death it was to descend to her children equally, the child or children of any deceased child or children to take the share which the parent would be entitled to if living. The said W. S. Smith was authorized by the will "as trustee or executor," at some convenient time to foreclose the mortgage, and purchase the land, if it could be done, for the debt, and "hold it subject to the same trusts as are attached to the debt." Or if the land could not be bid in for the debt, and should be sold to other parties, or if Neilson should pay the debt, the trustee was directed to hold the funds subject to the same trusts, or to purchase lands therewith, and hold them subject to the trusts.

W. and T. Harris and Evans answered this bill, and filed their answer as a cross-bill against the other parties to the original bill, claiming priority of satisfaction out of the land, and asking a foreclosure of their trust deed by sale. The chancellor, on final hearing, gave the complainants in the cross-bill the preference claimed by them, and the original complainant, and two of the Neilson children appealed.

A copy of the will of W. Smith was filed in evidence, but the certificate was defective. The complainants in the cross-bill waived all objection to the certificate of authentication, and agreed that the copy of

the will might be read subject to their other objections as to competency. These objections were that the will had never been filed in Greene county, Tennessee, for probate, or proved there; that it had never been recorded or registered in this State, and that no letters testamentary upon it had ever been taken out as required by the Code; and that, consequently, the original complainant could take no title under it to realty situated in this State.

A correct certificate of the authentication of a foreign will should include the probate: *Harris* v. *Anderson*, 9 Hum., 799; *Marr* v. *Gilliam*, 1 Cold., 512. The waiver of objection to the certificate of authentication necessarily implied that the will was proved according to the laws of this State, as required by the Code, sec. 2182. A foreign will so proved is sufficient to pass lands and other estate: Code, sec. 2185. And a copy of such a will duly authenticated in the manner prescribed by the act of Congress is made evidence in this State: Code, secs. 2186, 2188. The copy of the will of Wm. Smith in the record must be, under the waiver of objection, considered as thus authenticated. The will bequeathes the debt secured by the mortgage, and devises the land conveyed for its security to W. S. Smith as trustee, specifying the mode in which each, in certain contingencies, shall be held and used for the benefit of Mary J. Neilson for life, and after her death to go to her children absolutely. If the bill seeks a personal judgment against W. R. Neilson for the debt, which it does not in terms, no defense has been made by Neilson, and

no other person can set up a defense for him which only goes to the remedy. The main object of the bill is to enforce the mortgage by a sale of the land for the satisfaction of the debt. As between the original complainant and Neilson, the right of the former to the relief sought is clear. As between the complainant and the Harrises, in this view of the case, the question is one of priority or superiority of title. And if the statutes require the will to be proved recorded or registered in this State, before it can be recognized by the courts as a muniment of title to realty claimed by a devisee under it, then the objection made by the Harrises is well taken. For the will has never been proved, recorded or registered in this State.

The provisions of the Code, sec. 2182, *et seq.*, which bear upon this point, and of the statute from which they were taken, are, it has been said, somewhat obscure: *Williams* v. *Saunders*, 5 Cold., 60, 68. The obscurity will be to some extent expelled by considering the pre-existing law, and how far it was intended to be changed. It was the settled rule of English law, recognized by our courts as in force in this State, that a devise of land was in the nature of a conveyance and special appointment, passing only the title to the testator at the date of publishing the will: *Brydges* v. *Duchess of Chandos*, 2 Ves., Jr., 427; *Wynne* v. *Wynne*, 2 Swan, 407. There was no provision in England, until recently, for the probate of wills of realty by the probate courts so as to conclude all parties in interest, and it was necessary to establish such a will by proof whenever any ques-

tion occurred in court involving its validity: *Haber-gham* v. *Vincent*, 2 Ves. Jr., 230. At common law, therefore, a devise of land was good without probate of the will containing it: *Weatherhead* v. *Sewell*, 9 Hum., 272. A foreign will, duly authenticated, might be introduced in evidence as a muniment of title: *Donegan* v. *Taylor*, 6 Hum., 501. It was for this reason that the act of 1784, ch. 10, sec. 6, (Code, secs. 2197, 2200), made the probate of wills and attested copies evidence of the devise of real estate, with leave to any person, upon the suggestion of fraud in the execution of the will, to insist upon the production of the original. The probate of a foreign will of personalty in the forum of the testator's domicil is conclusive on all persons: *Williams* v. *Saunders*, 5 Cold., 60. A foreign will, duly proved, being conclusive as to personalty, and the will itself being evidence as a muniment of title as to realty, the act of 1809, giving foreign executors and administrators the right to sue in this State, in virtue of their letters testamentary or of administration, was in accord with the then existing law, and was never supposed, to be inconsistent with the act of 1823, ch. 31, brought into the Code, sec. 2182, *et seq.* The act of 1809 was repealed by the act of 1840, and it then became necessary to have administration of personal assets in this State. And as a result, it was held that a will executed and probated in another State would not be regarded in this State, so far as the personal assets in this State were concerned, until made effectual as provided by the laws of this State:

*Carr* v. *Lowe,* 7 Heis., 84. The same reason does not apply to a will of realty, properly probated in a foreign State in the mode required by our laws. Such a will, duly authenticated, may still be used as a muniment of title. The provisions of the Code already cited cover the case.

By the contract of October 22, 1868, between Easterly and Neilson, the latter acquired an equitable right to one-half of the land bought from Hancher, charged with the payment of one-half, the purchase money. He did actually pay $2,965.61. of the purchase money, the greater part of which was borrowed from Foster upon the suretyship of Wm. Smith. The surety was indemnified by the mortgage of the 25th of December, 1870. That conveyance carried all the interest of Neilson in the land under his contract with Easterly. This interest was formally recognized by Bell and Easterly, after the conveyance of the land to them by Hancher, by their title bond of December 15, 1870, which was for the half of the land set apart to Neilson by agreement. This bond was conditioned for the making of a title upon the payment of the balance of the purchase money due from Neilson for his half of the land, and between three and four hundred dollars of Neilson's personal indebtedness to Bell on other accounts. As between Bell and Easterly and Wm. Smith, the former could only claim priority of satisfaction to the extent of the unpaid purchase money. The mortgage would give a superior right to the mortgagee over Bell for the residue of his debt over the unpaid purchase money.

Bell's debt was paid with the money borrowed from W. and T. Harris. The conveyance of Neilson and wife to Evans in trust to secure this loan, was only a conveyance of the land to which Neilson was entitled under the contract with Easterly, and the title bond of Easterly and Bell. It was taken with full knowledge of the previous mortgage of Smith, under the mistaken belief, superinduced by Neilson, that the mortgage debt had been paid. The debt to Bell was extinguished, and Easterly and Bell, on March 13, 1877, in compliance with the terms of their title bond, made to Neilson and wife a deed in fee to the land. The use of the money borrowed from the Harrises to pay for the land did not give to the lenders the right to be subrogated to the vendor's lien, nor did it create in their favor a resulting trust; *Durant* v. *Davis,* 10 Heis., 522; *Gray* v. *Baird,* 4 Lea, 212. Nor would the principle of subrogation, which is one of equity merely, be applied so as to interfere with prior legal or equitable rights: *Gaskill* v. *Wales,* 36 N. J. Eq., 527. And the equity arising from the fact that the money loaned was used in paying the purchase money is only the same equity which the mortgagee might claim for the like use of his money. No advantage accrues to the Harrises by reason of the fact that the subsequent legal title of Neilson and wife inures to their benefit under the warranty in the trust deed, whereas there is no such warranty in the mortgage deed. For the contest is not between parties having equal equities, in which case the obtaining of the legal title may sometimes give an ad-

Smith *v.* Neilson.

vantage of which equity will not deprive the party. For here the rights of the parties are governed by positive statute, the first recorded giving the better right: Code, sec. 2073.

The original complainant is entitled, as trustee, to subject the land to the satisfaction of the mortgage debt, and to be first paid out of the proceeds of sale. But inasmuch as Neilson and wife have been in possession of the land since the death of Wm. Smith, and up to the appointment of a receiver in this case, and the wife has enjoyed the rents, issues and profits, no interest will be calculated on the mortgage debt between these dates. The complainants in the cross-bill will be entitled to the net rents, after deducting the expenses of the receivership, in the hands of the receiver, the rents having been impounded on their motion. They will also be entitled to any surplus proceeds of the sale of the land after satisfying the mortgage debt and the costs of the case. The covenants of the trust conveyance made to secure the debt to W and T. Harris are, of course, not binding on the wife of Neilson, and her interest under the will of her father was in the mortgage debt, not in the land. Her life estate in the fund did not, therefore, pass to the trustee by virtue of the trust conveyance. The entire costs, other than those arising out of the receivership, will be first paid out of the proceeds of the sale of the land.

The decree of the chancellor will be reversed, and a decree entered in accordance with this opinion.