JOSEPH H. GUE, PLAINTIFF IN ERROR, v. HENRY O. JONES, DEFENDANT IN ERROR.

1. **Ejectment:** JURISDICTION. S. brought an action in a district court of the late territory of Nebraska against P., who was a non-resident, obtained an order of attachment, which was levied upon a city lot. Service was had upon P. by publication, only. No appearance was made by P. Judgment by default was regularly entered, order issued for the sale of the attached lot, sale made and confirmed. There being an execution issued for a supposed deficiency, certain lands situated in the same county were levied on and sold by the sheriff, and bought in by S. In an action of ejectment by the grantee of P. against the grantee of S. for the said land, *Held*, That the same was a direct proceeding against the colorable levy, sale, and deed of said land to S., which are void.

2. **Taxes:** DEED. A tax deed under the act of 1861, not executed under the official seal of the county treasurer, *Held*, Void.

3. **Adverse Possession.** Evidence introduced for the purpose of proving the adverse possession of the land in question for the period of ten years before the commencement of the suit, examined, *And Held*, To sustain the verdict and judgment.

ERROR to the district court for Douglas county. Tried below before NEVILLE, J.

*Kennedy & Gilbert*, for plaintiff in error, cited: *Phillips v. Dawley*, 1 Neb., 320, 322. *McKeighan v. Hopkins*, 14 Neb., 368. *Horbach v. Miller*, 4 Neb., 46. 39 N. H., 268, 277, 281. *Ewing v. Burnet*, 11 Peters, 44, 53. *Green v. Liter*, 8 Cranch, 229. *Heiser v. Riehle*, 7 Watts, 35, 37. *Boyer v. Benlow*, 10 S. & R., 303. *Miller v. Shaw*, 7 S. & R., 134.

*Estabrook & Irvine*, for defendant in error, cited: *Cadens v. Teasdale*, 53 Vt., 469. *Thompson v. Pioche*, 44 Cal., 508. *Pray v. Pierce*, 7 Mass., 383. *Fugate v. Pierce*, 49 Mo., 447. *Baldwin v. Merriam*, 16 Neb., 200, and cases cited.

Cobb, J.

On the 9th day of January, 1882, Henry O. Jones, plaintiff in the court below, commenced an action in ejectment in the district court of Douglas county against Joseph H. Gue, defendant therein, for the south-west quarter of the north-west quarter of section twenty-one, township sixteen north, of range twelve east. The defendant filed his answer, admitting possession of the premises and denying all other allegations of the petition.

On the 10th day of June, 1885, the cause was tried to the court, a jury being waived, the finding and judgment were for the plaintiff. The defendant claiming a second trial under the provisions of the statute, the finding and judgment were set aside for a new trial. Thereupon the cause came on for a second trial, a jury being waived. The trial was had to the court, with the finding and judgment for the plaintiff. The defendant filed a motion to vacate the judgment, and application for a new trial, for cause, which being overruled, the defendant brings the case to this court on the following assignments in error:

I. The court erred in its findings that the plaintiff had a legal estate in, and was entitled to the immediate possession of, said land, and that the defendant unlawfully keeps him out of the same.

II. The court erred in rendering a judgment in favor of the plaintiff, whereas, upon the facts and the law, judgment should have been rendered in favor of the defendant.

III. The findings and judgment are contrary to law, and are not sustained by the evidence.

The first assignment of error is addressed to the defendant's paper title. The plaintiff's title consists of two patents of the land from the president of the U. S. to Allen F. Peck, the first dated April 2, and the other May 1, 1860, and a deed from Peck and his wife to Henry O.

Jones, duly executed August 1, 1871, and duly recorded September 8, 1871.

The paper title of the defendant is a sheriff's deed, of the sheriff of Douglas county, and a tax deed of the treasurer of said county to one Francis Smith, with mesne conveyance from Smith to the defendant.

It appears from the record that, in 1860, said Smith commenced an action against said Peck, then the owner of the land in question, and owner of a city lot in Omaha, and caused an attachment to be issued and levied on the city lot. There was no personal service of summons in this action, Peck being a non-resident of the territory. Judgment was rendered for the plaintiff for $256 and costs; the attached lot was advertised and sold; the sale was confirmed by the court, there being a balance unsatisfied after applying the proceeds of the sale of said lot. Upon the confirmation of the sale it was ordered, on the 9th day of May, 1862, "that an execution for the balance due on said judgment issue." At a subsequent term of the court, commencing October 3, 1862, the execution, doubtless issued in pursuance of said order, was returned into court. The record does not disclose what was returned, but that the court adjudged that the return of the officer and his levy and sale of said property on said execution be, and the same was, in all respects ratified and confirmed, and the sheriff was ordered to execute and deliver to the purchaser of said property at the sale a good and sufficient conveyance therefor.

The record exhibits a copy of a sheriff's deed, in pursuance of the last above order of the court, conveying the land in question to Francis Smith for the consideration of $200.

The plaintiff in error, in the brief of counsel, cites the Statute of Nebraska, 1858, p. 183. The provision referred to as carried forward to Sec. 500, title 14, Rev. Stat., 1866, is as follows: "The deed shall be sufficient

evidence of the legality of such sale and the proceedings therein, until the contrary be proved," etc.    Counsel also cite several Nebraska cases to the point that the order for execution, confirmation of sale, and deed by the sheriff cannot be attacked collaterally.    That such has been the proper holding of this court in numerous cases is not denied.    But we understand in this case that the attack is direct, and in no sense collateral.    And that it is made in the most indisputable manner open to the plaintiff.

The defendant's grantor, Francis Smith, having a demand against Allen F. Peck, a non-resident, brought his action against him in the proper court for the purpose of subjecting his city lot to the payment of his debt.    He pursued the proper remedy and accomplished a lawful purpose.    Thereupon the jurisdiction of the court absolutely terminated in respect to the other property of Peck, or, more technically, its jurisdiction over the property of Peck having an existence only in regard to the city lot in question, could only be extended to other property by a new suit, affidavit, and notice by publication.    But it is contended that though the court proceeded without jurisdiction, and seized the land of Peck in fact, that the title obtained under such void proceedings is good except as against a direct proceeding of recovery.    I do not think that the exigencies of this case require further inquiry into this proposition, for, as above stated, I regard the plaintiff's action of ejectment as a direct attack upon the title thus obtained, and that, being thus attacked, it cannot stand.

At the trial the defendant produced a tax deed covering the premises in question, issued to Smith by the treasurer of Douglas county, August 4, 1865, for the taxes of 1862.    This deed was objected to by the plaintiff on several grounds, among others that it was not executed under the official seal of the treasurer.    The act of 1861, under which the deed was executed, provides, at Sec. 60, "that

such conveyance shall be executed by the county treas-
urer, under his hand and seal;" then follows the statu-
tory form of such deed, concluding with the words of
attestation, "In testimony whereof the said ........., treas-
urer of said county, has hereunto set his hand and seal,
on the day and year aforesaid.            [SEAL.]"

The statute has been substantially carried forward
throughout all the changes of the revenue law to the pres-
ent day.   Under its provisions it has been held by this
court in cases too numerous for citation, of which several
are cited by counsel for defendant in error, that *a tax
deed not executed by the treasurer under his seal of office is
void.*

It will not be expected that this line of decisions can
be departed from now.   The deed introduced in the case
at bar, if legal and proper in all other respects, as to
which we pass no opinion, is open to the fatal objection
that it does not purport to have been executed by the
county treasurer under his seal of office.

The defendant in the court below also claims title to the
land by virtue of ten years adverse possession.

From the abstract of the record furnished by counsel
for the plaintiff in error, all of the evidence is presented
upon which the claim is founded.

The defendant also introduced Charles Noyce, who was
sworn, and testified: "I am acquainted with the north-
west quarter section 21–16–12, and have known it ever
since I have lived out there—since the spring of 1859 or
1860.   I used to herd cattle all over there.   I live right
north of section 21.   It was what we called a 'naked prai-
rie.'   No improvements on it when I went there.   I was
the first one that improved it, which was when I bought it
of Mr. Smith, about four years ago.   Nobody ever lived
on it."

Q.   When did you first lease it?

A.   I never heard of anybody renting it or leasing it

before I did.    It must have been ten or fifteen years ago I
first leased it.    I leased it right along after that time.

Q.    Had anybody leased it before?

A.    I don't think anybody did.    Perhaps Mr. Gue had
it one year in betwixt.    Think he rented for only one
year.    One year I gave Mr. Gilbert the privilege of cut-
ting half of the hay with me.    We cut about 120 acres of
it.    The other was too poor for grass, and the cattle were
allowed to eat it.    I stacked the hay right on the land and
fed it out where I am living, and some I hauled to town.

Q.    In grazing cattle there, how would you keep them
on the land?

A.    I would have my boys herd them.

Q.    To what extent did you herd cattle on this land
during these years?

A.    In the spring they would do no damage and we
would herd them all over the land.    In the fall, "until
about October," Gilbert and Gue herded there too.

On cross-examination the witness testified: "I should
think we cut about 120 acres.    There were some dry years,
but I think it was mowed every year after we commenced
buying it; that is, the bottom.    Some years you can get
upon the hill more than you can other years."

Q.    The vacant land in that neighborhood was all pas-
tured in some years?

A.    Either cut or pastured.

Q.    And you pastured on that vacant land the same as
anybody else?

A.    Yes, sir; I had this land eight or ten years prior
to the time I bought it, which was four or five years ago.

Q.    Did you ever hear of Mr. Allen F. Peck being on
that land with Mr. H. O. Jones?

A.    No, sir.

Lewis Thomas testified: "I have known this land
twenty-five years; lived one mile from it.    Twelve or
thirteen years ago I rented it; another party, Mr. Smith,

told me to rent it to my neighbors. I rented it to Mr. Noyce. I know of no occupancy outside of Mr. Noyce, Mr. Gilbert, and Mr. Gue. I have seen these men cutting hay on the land until about four years ago, and I have seen them on the land ever since, making about thirteen or fourteen years in all. These parties herded their cattle on it; they exerted some authority to keep other folks off."

CROSS-EXAMINATION.

Q. How many years did you say they cut grass?

A. Mr. Noyce cut the grass fifteen or sixteen years ago.

Ira D. Gilbert, sworn and testified: "I am one of the defendants; have resided fifteen years across the road from this land in question. I have shared with Mr. Noyce in leasing this land for several years, probably eight or ten. We leased it up to the time we bought it, which was about four years ago, and cut hay sixty to one hundred acres. On the forty acres adjoining me, I lariated some horses and cattle on it. We plowed up some strips in the bottom and raised some potatoes on some of it eight or ten years may be before we bought it—fourteen years ago. Mr. Noyce and Mr. Gue herded on it."

Joseph H. Gue, sworn for defense, and testified: "Have known the land in question fourteen years; I resided on the land cornering on the north-west corner of this land. Mr. Noyce was the first man to use this land; he used it for a number of years. I used a portion of it one year, and Mr. Noyce used a portion. Mr. Noyce had control of it and used it every year until just before we bought the land. One year I leased it of Mr. Hamilton as agent of Mr. Smith. Mr. Noyce and Mr. Gilbert occupied it as hay land. The land in question was always held for hay and pasture land, and held pretty strictly as hay land because hay land was valuable up there, and a portion of this was pretty good hay land; there were furrows plowed on the west side of it; I have paid the taxes on the south-west quarter of it since I bought it, and have the receipts."

The defendant also offered in evidence the deposition of Benjamin F. Smith.

Benjamin F. Smith testified that in May, 1868, he was acting as agent of Francis Smith; that as such agent he went upon the land in question at that time; that he arranged with Lewis Thomas to sell or rent this land; "it was at that time unoccupied; that the land was rented by Mr. Thomas that season, and from year to year up to the time I sold it; I rented it in 1869 or 1870 to Charles Noyce, and one year to Lewis Thomas, I think in 1870 or 1871. I visited the land as often as once or twice each year, and never saw any one on the land except the parties I rented it to. The rents were paid to Caldwell, Hamilton & Co., our agents. Francis Smith and George Warren Smith paid all the taxes on this land up to the time it was sold to the defendants."

On cross-examination, Smith further testified: "I know it was leased in 1868 to Lewis Thomas."

Q. Will you swear it was leased in 1869?

A. Yes, sir.

Lewis Thomas, recalled by defendant, testified: "Since I left the stand I have a distinct recollection of cutting hay on that land myself; it was in the summer or fall of 1868; I rented it from one of the Smiths."

It has been held by this court in several cases, that of *Horbach v. Miller*, 4 Neb., 32, "that the title to land becomes complete in an adverse occupant when he has maintained an actual, continued, notorious possession, claiming the same as his own against all persons, for the full extent of the statutory period."

This case was followed by others, including that of *Gatling v. Lane*, 17 Neb., 77, cited by counsel for plaintiff in in error, and *Haywood v. Thomas*, Id., 237. In none of these was there much doubt of the character of the possession. In the first there was evidence of the possession of the land, by the party claiming it by adverse possession,

by means of a fence which enclosed the land, by cultivation of the land so enclosed, and by paying the taxes thereon for the full period of ten years. In the case of *Gatling v. Lane, supra,* the evidence was, that one C. C. Roberts purchased the property, which consisted of a city lot, at tax sale; that in 1867 the proper officer executed a deed for said lot, which was duly recorded; that on February 16, 1869, Roberts entered upon the lot, claiming the same as his own under the tax deed, and on September 2, 1869, conveyed the same to Wilson F. Street, who took actual possession and continued until December 2, 1870, when he sold and conveyed the same to the defendants, who remained in the peaceable, continued, exclusive, adverse, and uninterrupted possession of the premises, and made valuable and lasting improvements of the value of $2,000 thereon. These facts the court found, and that the defendants themselves had been in possession of the premises before the action was brought for more than three years. This was admitted by the plaintiff, whose contention was that the ten years' possession, however notorious, exclusive, and adverse, if not under color of title would not ripen into a title.

In the case of *Haywood v. Thomas* the action was brought by Hayward, who had paper title to several lots in one of the old additions to the town of Tekamah. George P. Thomas, in his life-time having a tax title on all the lots of said addition, entered upon the same and erected a post and board fence around the whole, with the exception of a portion of one string, where he joined it on to a fence previously erected by O. Harrington, and a portion of one other string, which was rendered unnecessary by a stream of water which formed the northern limit of said portion of said town, and to which the east string of Thomas' fence was extended and connected, completely enclosing the lots in controversy, together with other lots and parts of streets. There was a contention on the part of the plaintiff in error in that case that the fence had not

been kept up continuously for the full period of ten years, but that case was decided on the theory that the proof as to that fact was sufficient.

Under the evidence adduced at the trial, the district court failed to find that the possession of the defendant had been open, notorious, adverse, and exclusive for the full period of ten years next before the commencement of the action, so as to give the defendant title by adverse possession.

And having carefully examined the evidence in the light of the authorities above cited, as well as those cited by counsel for plaintiff in error, I am unable to say that its findings and conclusions are unsustained by the evidence.

The judgment of the district court is therefore affimed.

JUDGMENT AFFIRMED.

THE other judges concur.