---

[No. 5787.]

## SAYRE v. SAGE.

1.  **Quieting Title—Tortious Possession** — A possession obtained without violence, or any unfair or corrupt means, even though a trespass, and for the purpose of instituting the action, is sufficient.—(561)

2.  **Pleadings—Matters Occurring After Issue Joined** — Matters occurring after issue joined must be presented by supplemental pleading. Possession assumed by defendant, pending a bill to quiet title, will not be considered, unless set up by supplemental answer.—(561)

3.  **Patent for Lands—Relation to Entry**—The entry of lands in the land office of the United States vests title in the entryman. The patent subsequently issued conveys no additional title, but is merely legal evidence of the title acquired by the entry and purchase.—(562, 563)

4.  **Wills—Foreign Probate**—An exemplification of the probate of a will in the courts of another state is not admissible to establish title to lands in this state.—(564)

5.  **Tax Title—Tax Deed—Seal**—It is a positive requirement of the statute (Mills' Stats., sec. 3902) that the treasurer's deed of lands sold for taxes must be attested by the official or private seal of the treasurer. Without one or the other it is void.—(565)

The statute declaring that a seal or scroll shall not be required to the proper execution of the deed of lands (Mills' Stats., sec. 441, Rev. Stats., sec. 682) applies only to private conveyances.—(566)

Note—By the statute now in force (Laws 1902, ch. 3, Rev. Stats., sec. 5730) it is no longer required that the treasurer's deed shall be under seal.

6.  **Statutes—Implied Repeal**—A statute providing that the treasurer's deed of land sold for taxes shall be attested by his official or private seal (Mills' Stats., sec. 3902) is not affected by

subsequent statute relating to conveyances by, private persons
and declaring that no seal or scroll shall be necessary (Mills'
Stats., sec. 441, Rev. Stats., sec. 682).—(566)

7. **Limitations — Void Deed of Land Sold for Taxes** — The
statute that no action shall lie for the recovery of lands sold
for taxes, unless "brought within five years after the execution
and delivery of the deed" (Mills' Stats., sec. 3904, Rev. Stats.,
sec. 5733) does not bar an action to set aside a tax deed void
upon its face.—(567)

8. **Tax Deed—When Color of Title**—Under Mills' Stats., sec.
3902 (Rev. Stats., sec. 5730), a tax deed does not, until recorded,
constitute color of title, so as to set in motion the seven years'
limitation act (Laws 1893, ch. 118, secs. 6, 7; Rev. Stats., secs.
4089, 4090), nor the five years' limitation act (Mills' Stats., sec.
2912, Rev. Stats., sec. 4073).—(568)

Where the deed is void upon its face, neither of these stat-
utes is available as a defense to the action of one deducing title
from original sources.—(568)

*Appeal from Gilpin District Court*—Hon. A. H.
DeFrance, Judge.

Messrs. Dorsey & Hodges, and Mr. E. J. Thayer,
for appellant.

Messrs. Elliott & Bardwell, and Mr. Samuel
W. Johnson, for appellee.

Mr. Justice Gabbert delivered the opinion of
the court:

Appellee, plaintiff below, brought suit against
appellant, as defendant, to quiet title to the Borton
lode mining claim, and to have a tax deed declared
void. The judgment was in favor of the plaintiff,
from which the defendant appealed.

The first point urged, is, that plaintiff failed to
establish he was in possession of the property in con-
troversy at the time he commenced his action. There
is testimony from which it appears that defendant
took possession of the lode claim in 1893, and possi-
bly it might be said, remained in possession until

December, 1902, although it does not appear that he exercised any acts of possession over the property from September, 1898, to the commencement of this action. On the 8th of December, 1902, plaintiff had the property surveyed and marked its boundaries with monuments and stakes, and employed a party who performed work thereon for a few days. Suit was commenced by filing a complaint the next day. It does not appear that prior to the commencement of the action defendant resumed possession. It is urged that taking possession in the manner indicated was tortuous; that it was for the purpose of bringing suit; and that possession acquired in such circumstances will not support an action to quiet title. In taking possession plaintiff committed no violence, nor did he obtain it by the use of unfair or corrupt means. The most that can be claimed is, that he committed a trespass, but he obtained possession peaceably, and even though it may have been for the purpose of bringing his action, a possession so obtained is sufficient for the purpose of maintaining a suit to quiet title.—*Phillippi v. Leet,* 19 Colo. 246.

It is next urged that the court erred in rendering judgment in favor of the plaintiff because he failed to show that he was in possession of the property at the time the cause was tried. The defendant at the trial, over the objection of the plaintiff, introduced evidence that he was then in possession. This testimony was irrelevant and incompetent, and was evidently subsequently disregarded by the court. The possession at issue, as made by the pleadings, was the possession as it existed at the time the suit was commenced. If the defendant, by taking possession after the issues were made by the pleadings originally filed, could defeat the plaintiff's right to maintain his suit (a proposition upon which we express no opinion), it was necessary for him to have pre-

(36)

sented that issue by a supplemental answer. Matters occurring after the issues are made by the original pleadings cannot be considered or embraced in a decree unless brought into the case by supplemental pleadings.

Plaintiff deraigned his title through a patent from the United States to The Rochester Gold Mining Company, a corporation. It is contended by counsel for defendant that this patent was of no force or effect, because of the following facts: The patent was dated August 1, 1877. The corporation had been dissolved and a receiver appointed therefor on June 26, 1876. Upon these facts it is urged that no title passed by the patent, because there was no corporate entity to receive it from the United States at the time it was issued. Whether or not this contention is sound, from the facts above narrated, is immaterial, because, from other facts, it is clear that the title to the property was in the corporation at the time the receiver was appointed. The company had purchased the lode claim from the government on the 7th day of June, 1876, and it became entitled to a patent as of that date, although it was not issued until the 1st of August the following year. Where the right to a patent has once become vested in a purchaser of public lands from the government, it is equivalent, so far as the latter is concerned, to a patent actually issued. The execution and delivery of the patent after the right to it has become vested are mere ministerial acts of the officers charged with that duty.—*U. S. v. Freyberg,* 32 Fed. 195; *Simmons v. Wagner,* 101 U. S. 260.

A patent does not invest the purchaser with any additional property in the land which it purports to convey. It only gives him better legal evidence of the title which he first acquired by his certificate of purchase issued by the officers of the local land office.

—*Omaha & Grant S. & R. Co. v. Tabor,* 13 Colo. 41;
*Struby-Estabrook Co. v. Davis,* 18 Colo. 93.

By virtue of the certificate of purchase issued to
the corporation prior to the time a receiver was ap-
pointed therefor, the title to the property in con-
troversy was vested in it, and the subsequent issuance
of the patent conveyed no additional title but was
merely legal evidence of the title acquired by the
receiver's receipt, and inured to the benefit of those
who had obtained title through the proceedings to
dissolve the corporation and their grantees.

The proceedings to dissolve the corporation were
had in, and the receiver therefor appointed by, a
court of competent jurisdiction in the state of New
York. The decree dissolving the corporation di-
rected that its estate, both real and personal, should
vest in the receiver upon his qualifying as specified.
Subsequent to the qualification of the latter, the com-
pany executed to him a deed for the Borton lode. It
is claimed that this deed is of no force or effect for
the reason that it was executed without an order of
the court in which the dissolution proceedings were
pending, and as the corporation had ceased to exist,
it had no authority to execute such conveyance. We
do not regard this proposition of any moment. If
we should adopt the view of counsel for the defend-
ant, to the effect that the appointment of a receiver
for a corporation does not vest in him its title to real
estate, situate outside the state in which the appoint-
ment is made, in support of which *Simpkins v. Smith
& Parmalee Gold Co.,* 50 How. Pr. Rep. 56, is cited,
then it follows, on the authority of that case, that the
Borton lode remained the property of the corpora-
tion, and could be disposed of by it as if no receiver
had been appointed, and hence, the deed of the cor-
poration to the receiver was valid. On the other
hand, if the law be as claimed by counsel for plaintiff,

that the appointment of a receiver on the dissolution of a corporation vests in the receiver the title to all property of the corporation wherever found, whether within or without the jurisdiction of the court making the appointment, in support of which *American Nat'l Bank v. Nat'l Benefit & Casualty Co.,* 70 Fed. 420; High on Receivers, § 303; and *Owen v. Smith,* 31 Barb. 641, are cited, the title to the subject-matter of controversy vested in the receiver.

The receiver conveyed the property in controversy to one W. N. Sage. Plaintiff claims title as follows: Sage died intestate, devising the property to his wife and son, the plaintiff. Mrs. Sage died intestate, leaving as her sole heir the plaintiff. The will was admitted to probate in the state of New York, the domicile of deceased. A certified copy thereof, together with certificates to the effect that it had been duly admitted to probate and was proven agreeable to the laws and usage of the state of New York, was admitted in evidence on behalf of plaintiff. This, it is urged, was error, upon the ground that the will had not been admitted to probate in this state. We are of the opinion that the copy of the will was not admissible and that the objection of defendant thereto was well taken, and should have been sustained. The probate of a will in one state does not establish its validity as a will devising real estate in another state unless the laws of the latter permit it. —*Robertson v. Pickrell,* 109 U. S. 608. Sec. 4678, 2 Mills' Stats., provides how a will probated in another state may be admitted to probate in this state, and until this provision of our statute law has been complied with, we cannot assume that a will admitted to probate in another state is valid for the purpose of devising real estate in this; and hence, it follows, that the copy of the will admitted to probate in the state of New York, with the certificates mentioned attached,

was not admissible for the purpose of establishing title in plaintiff to the property in controversy.

Counsel for plaintiff cite cases from other jurisdictions, particularly from the state of Illinois, wherein it is held that where the certificate of the probate of a will in a foreign state shows that it was executed and proved according to the laws of that state, and such certificate is in the mode required by the statute of Illinois, it is admissible in evidence. These decisions rest upon a special statute of the state of Illinois, which provides that a will admitted to probate in a foreign state, when certified in the manner provided by the statute, shall be good and available in law in like manner as wills made and executed in the state of Illinois. See *Harrison v. Weatherby,* 180 Ill. 418 (436).

See, also, *Lindley v. O'Reilly,* 7 Am. St. Rep. 802 (814), 50 N. J. Law 635; *Smith v. Neilson,* 81 Tenn. 461 (466). We have no such statute.

The defendant claimed title to the disputed premises under a tax deed, and the remaining questions presented for determination are, whether or not he established any title under such deed? Sec. 3902, 2 Mills' Stats., which was in force at the time this deed was executed, provides, in substance, that a tax deed shall be signed by the treasurer in his official capacity, and attested by his official or private seal. The deed in question had neither seal. The general assembly has the authority to prescribe the form and requisites of a tax deed. The treasurer, in executing such deed, acts under a naked statutory power, and in order that it shall be valid, it must comply substantially with the provisions of the statute prescribing its form. That it must be attested by the official or private seal of the treasurer is a positive requirement of the statute, and is as necessary to its validity as any other. Without one

or the other of the seals specified, it is void.—*Sutton v. Young,* 4 Neb. 319; *Deputron v. Young,* 10 Sup. Ct. Rep. 539, 134 U. S. 241; *Gue v. Jones,* 25 Neb. 634; *Reed v. Merriam,* 15 Neb. 323; *Gage v. Starkweather,* 103 Ill. 559; *Reed v. Morse,* 51 Kan. 141.

On behalf of the defendant it is urged that sec. 441, 1 Mills' Stats., which provides it shall not be necessary in executing a conveyance of real estate that it be executed under the seal of the grantor, nor that any seal, scroll, or other mark be set opposite his name, which was passed in 1887, and subsequent to the statute to which we have referred requiring the treasurer to attest a tax deed with his official or private seal, repeals this act. This contention is not tenable. The section only affects private conveyances. It makes no mention of official seals. Besides, the statute prescribing the form of a treasurer's deed is a special one, and it will not be assumed that the legislature intended to modify it in any way by subsequent statute, unless the intention to do so clearly appears.

The county clerk testified that he had charge of all the records of his office, and after diligent search, was unable to find any affidavit of the publication or posting of notice of tax sales on file in his office for the year the property in controversy was sold. By sec. 3885, 2 Mills' Stats., it is made the duty of the county treasurer to deposit such proofs with the county clerk. Counsel for plaintiff contend that the testimony of the county clerk rendered the tax deed invalid, while counsel for the defendant assert that in view of the fact that many years have elapsed between the date of sale and the time of trial, the evidence of the county clerk that no such affidavit could be found was not sufficient to overcome the presumption that the law had been complied with. In view of the fact that the deed is void for reasons given,

we do not deem it necessary to pass upon this question; but, in addition to the authorities cited by counsel, call attention to the case of *Bertha Gold M. & M. Co. v. Burr,* 31 Colo. 264.

The defendant pleaded the following statutes of limitation, as defenses:

"No action for the recovery of land sold for taxes shall lie unless the same be brought within five years after the execution and delivery of the deed therefor by the treasurer, any law to the contrary notwithstanding;    *    *    *."—§ 3904, Mills' Stats.

"Every person in the actual possession of lands or tenements under claim and color of title made in good faith, and who shall, for seven consecutive years, continue in such possession, and shall also during said time pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements to the extent and according to the purport of his or her paper title.    *    *    *."—§ 2923-e, *ibid,* Rev. Supp.

"Whenever any person having color of title made in good faith to vacant and unoccupied land, shall pay all taxes legally assessed thereon for seven consecutive years, he or she shall be deemed and adjudged to be the legal owner of said vacant and unoccupied land to the extent and according to the purport of his or her paper title.    *    *    *"—§ 2924, *ibid.,* Rev. Supp.

"Bills of relief in case of the existence of a trust not cognizable by the courts of common law, and in all other cases not herein provided for, shall be filed within five years after the cause thereof shall accrue, and not after."—§ 2912, Mills' Stats.

Sec. 3904, *supra,* does not bar an action to set aside a tax deed upon the ground that it is void upon its face.—*Gomer v. Chaffee,* 6 Colo. 314; *Brinker v.*

*U. P., D. & G. Ry.,* 11 Col. App. 166; *Dimpfel v. Beam,* 41 Colo. 25; *Page v. Gillett, ante,* p. 289.

The tax deed was issued in 1893, but was not recorded until September, 1898. This action was commenced in December, 1902, or less than seven years after the tax deed was recorded. Color of title can only arise out of a conveyance purporting to convey title to real estate.—*Omaha & Grant S. & R. Co. v. Tabor, supra; Warren v. Adams,* 19 Colo. 515.

By virtue of the provisions of § 3902, 2 Mills' Stats., which recites, in substance, that when a tax deed is recorded in the proper record of titles to real estate it vests in the grantee all the right, title and interest of the former owner in and to the land thereby conveyed, a tax deed does not purport to convey any title to real estate until it has been filed for record in the proper office. Hence, it follows, that neither § 2923-e nor § 2924, *supra,* operates to give the grantee in a tax deed color of title until it has been filed for record.—*Morris & Thombs v. St. Louis Nat'l Bank,* 17 Colo. 231; *Wason v. Major,* 10 Col. App. 181.

Under sec. 2912, *supra,* the bar of the statute does not begin to run until the deed is recorded, for the reason that it is only after it has been filed for record that any title of the owner is conveyed.— *Morris & Thombs v. St. Louis Nat'l Bank, supra.* As it appears that defendant was not in possession of the lode mining claim in controversy for the period of seven years between the date his tax deed was filed for record and the commencement of the action against him, and that five years had not elapsed after his tax deed was recorded before plaintiff instituted his suit, and it also appearing, for the reasons given, that the deed was void upon its face, neither of the

sections relating to limitations was available as a defense.

From the record before us it appears that defendant failed to establish any title under his tax deed; but inasmuch as plaintiff failed to establish title to the premises in controversy, the judgment of the district court must be reversed and the cause remanded for a new trial, and it is so ordered.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE WHITE concur.