## No. 11,675.

### Bowers *v.* McFadzean.

Decided June 20, 1927.

Action to quiet title to water. rights. Decree for plaintiff.

### *Reversed.*

1. WATER RIGHTS—*Government Land.* A relinquishment of rights to government land by an entryman does not operate as a surrender of water rights decreed by a state court and used in connection with the land.

2.        *Natural Streams—Ownership.* Colorado is the owner of the water of its natural streams, and a land patent from the United States to an individual grants no interest in such waters.

3.        *Quieting Title—Seven Year Statute.* One claiming title to water rights by reason of possession and payment of taxes for seven years under color of title, must allege and prove with exactness all of the facts upon which it is based.

4. QUIETING TITLE—*Possession and Payment of Taxes.* One who claims title to property by reason of possession and payment of taxes for seven years under color of title, must himself pay the taxes during the time he is in possession.

5. APPEAL AND ERROR—*Sufficiency of Evidence.* In an action to quiet title to water rights, evidence held insufficient to establish plaintiff's title by possession and payment of taxes for seven years under color of title.

6. WATER RIGHTS—*Conveyance.* A court finding of conveyance of water rights held not justified by the evidence, there being no proof connecting grantor with the rights, and no express description of the property claimed to have been conveyed.

*Error to the District Court of Saguache County, Hon. Jesse C. Wiley, Judge.*

Mr. JOHN I. PALMER, for plaintiff in error.

Messrs. STEPHENSON & MARTIN, for defendant in error.

*Department Two.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS is a controversy over the ownership of water rights. The complaint of plaintiff McFadzean, containing three causes of action, has for its object the quieting of plaintiff's title thereto. The first cause alleges that plaintiff is the owner in fee and in possession of two certain statutory decreed water priorities in water district No. 27, Nos. 4 and 5, each for 40 inches of water, which were decreed to William P. Curby by the district court of Saguache county in March, 1882, each priority bearing date of February, 1880. The second cause of action pleads our seven year statute of limitation, plaintiff alleging that for more than seven successive years prior to the commencement of the action he, himself, was in actual possession and continued in such possession of these water rights, and while so in actual possession thereof, paid all taxes legally assessed upon them. The third cause of action pleads the twenty year statute of limitation. The answer denies each and all of the causes of action and sets up ownership by the defendant of the water rights in question by reason of mesne conveyance from William P. Curby to whom the water rights were decreed. Trial was to the court without a jury and the

findings generally were for the plaintiff and a decree passed quieting title in him.

Upon a careful examination of the record we are forced to the conclusion that there is no legitimate evidence to sustain this decree. It will elucidate, as well as shorten, the discussion by first summarizing the evidence. The undisputed facts are that Curby made some sort of filing on government land. While occupying the same Curby made an appropriation from La Garita creek of water for irrigating the same and in a statutory proceeding then pending in the district court of Saguache county obtained in March, 1882, two separate decrees for two separate ditches numbered 4 and 5 for 40 cubic inches each, the priorities dating February, 1880. Presumably this water was used by Curby for that purpose. Curby's entry and filing did not ripen into a patent. He gave it up and quit possession of the land. Thereafter there were several other entrymen, who did not perfect their rights, and finally William Mattern filed upon the land and his entry culminated in a patent about the year 1900. In 1904 Mattern conveyed the land to McFadzean, the plaintiff, together with "all water rights, water and ditches in any way appertaining." About 1910 or 1911 McFadzean entered into a contract with one Gallegos for the sale of this tract. Gallegos entered into possession of the land under the contract and farmed it. When he attempted to irrigate the land through the ditches with the number 4 and 5 priorities he was not permitted by Mr. Coolbroth, the water commissioner, to divert the same. On the cross-examination of Gallegos it was brought out that when the water commissioner refused to allow him to divert water of these two priorities he concluded that he had no rights therein and proceeded to, and did, file upon and received a decree for, two separate priorities of a later date to the two ditches on this land as of date July, 1884. It was the water thus awarded to him for these ditches that he was allowed to and did use in irrigating the land while he was in posses-

sion. Gallegos further testified that he had no contract with McFadzean for water or water rights and the latter never mentioned water rights in connection with their contract. Gallegos, it seems, did not carry out his contract of sale or receive a deed for the land though he was on the place thereafter probably as an employee of subsequent grantees of McFadzean. In 1913 the plaintiff McFadzean conveyed the land and water rights to one Juan Trujillo. In 1918 Juan Trujillo conveyed to Ramos Trujillo and in 1922 Ramos conveyed back to McFadzean. During the years from 1913 to 1922 these respective grantees were in actual possession of the land continuously. There is no legal evidence that any of these parties from the time Mattern sold to McFadzean in 1904 until this action was brought, August 10, 1925, was in the actual possession, or what is the equivalent thereto, of these particular Curby water rights, or that any of them used the same or any part thereof, though use of water was made under some claim of right. Neither is there any evidence that Curby or his heirs ever sold or conveyed or attempted or intended to convey water rights Nos. 4 and 5 to any person except to the grantors of the defendant Bowers, under which claim of grant the latter asserts title, or that he abandoned them or intended to relinquish his claim thereto. We are now prepared to discuss the legal features of the case.

1. Manifestly there is a complete failure to establish the first cause of action. Curby was the decreed owner of these two priorities. Though they were to be used for irrigating the described lands, under our decisions, Curby might have conveyed the land, if he had received a patent, to one person and the water rights to another, or might have changed the points of diversion, or used the water on other lands. By the failure to get a patent and by quitting possession Curby lost all his rights to the land as against the United States and its grantees, but his abandonment of the land, or relinquishment of his right, as an entryman did not operate as a loss of his water

rights or as a surrender thereof, either to the United States or its patentees; nor did it vest title to the water priorities in either the United States or its patentees. Curby's title or right to the use of water of the natural streams in the state of Colorado, did not come from the United States, but from the state of Colorado which is the owner in its sovereign capacity of the waters of all of its natural streams, and it is only the right to the use of the water that it permits appropriators to acquire. The ownership of the water itself of all our natural streams still is in the state of Colorado. Plaintiff asserts title by virtue of ownership of patented land, for irrigating which, the decreed water rights were appropriated. He does not claim or, if he did, it would be futile for him to do so, under the rule in this state, that it was the intention of the United States or of plaintiff's immediate grantor Mattern to convey them. Mattern was not a grantee of Curby but of the United States. The United States, at the time of its patent to Mattern, did not own the waters of natural streams in this state, or the water rights of appropriators therefrom; hence it could not, and did not intend to, grant something which it did not own. Its patent passed only the naked land. The right to the use of the water of the natural stream which Curby got was a right separate and distinct from the right to the land that he got from the United States. The water right he acquired by decree from the state. The land he got by United States patent. If Curby intended to abandon or relinquish the decreed water rights when he quit possession of the land, as to which there is no evidence that he did, these water rights did not revert to the United States or to its patentee. If they reverted at all it was to the state of Colorado and, in case of a loss or abandonment thereof by the appropriator, became a part of the unappropriated waters of the natural stream subject thereafter to a new and distinct appropriation by a citizen who might file upon them.

2. Neither is the second cause of action, based on the seven year statute of limitation, established. The statute provides, among other things, that every person in the actual possession of lands, under claim and color of title, made in good faith, and who shall, for seven successive years continue in such possession, and shall also, during said time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner  *  *  *  to the extent and according to the purport of his or her paper title. The statute also provides that all persons holding under such possession by purchase, etc., before said seven years shall have expired, and who shall continue such possession, and continue to pay taxes so as to complete possession and payment thereof for the full term of seven years, shall be entitled to the benefit of the section. The difficulty in plaintiff's case, however, is that not only has he not any paper title to these water rights, the description in the Mattern deed not being specific or ascertainable without other evidence; neither was there any averment in the complaint nor any evidence nor any attempt by the plaintiff to tack on to his possession that of any of his grantors or grantees. There is no allegation in the complaint that some other person in the chain of plaintiff's title had been or was in possession for any part of the seven years, or that he succeeded to their rights, or that he continued such possession. On the contrary, the complaint expressly alleges that plaintiff himself for more than seven successive years was in the actual possession and he, himself, paid the taxes. In *Gibson v. Huff,* 26 Colo. App. 144, 141 Pac. 510, it is said that one who relies upon this statute must plead and prove with exactness all of the facts upon which it is based. *Evans v. Welch,* 29 Colo. 355, 68 Pac. 776, says that the evidence in such cases must be clear and satisfactory. So also must the possession relied upon be under claim and color of title made in good faith. *Silford v. Stratton,* 54 Colo. 248, 130 Pac. 327. There was no proof of this necessary element. In *Poage v.*

*Rollins,* 24 Colo. App. 537, 135 Pac. 990, upon the subject of what is necessary to possession in a defense under this statute, the court said three facts must exist: (1) The defendant sued must be in possession; (2) he must have been an actual resident on the land for seven successive years after going into possession; (3) during all this time he must have had a connected title in law or equity deducible of record. Neither of the three elements was made out by the evidence. The court also said in the Poage case: ''This statute of limitations appears to be available as a plea in bar only in an action brought to recover lands against one who, at the time suit is brought, is in the possession of, and for seven successive years has actually resided upon, the disputed premises.'' Proof as to this cause of action did not show actual possession or claim and color of title in good faith. There was no sufficient description of these water rights in the complaint and there was no evidence. Plaintiff is not entitled to rely on the claim that these water rights passed by his deed from Mattern, without express description, if Mattern's intention was to convey them. If Mattern's patent from the government had included water rights and the United States was the source of title thereto, there might be some ground for such a reliance, but inasmuch as the state of Colorado, and not the United States, is the ultimate source of title of water rights, the plaintiff has not connected himself with any such title. It is the intent of the grantor, not that of the grantee, in such cases which governs, and inasmuch as it is conceded that Curby was the decreed owner of the water rights in controversy and neither he nor his heirs have made any grant thereof except to the defendant Bowers and his grantors, the plaintiff is not aided in any respect by such circumstances. That one who holds under color of title must himself pay the taxes during the period he is in possession, see *Ballard v. Golob,* 34 Colo. 417, 83 Pac. 376 and *Webber v. Wannemaker,* 39 Colo. 425, 89 Pac. 780. The trial court was not authorized by the

evidence in its findings to say that the conveyance by Mattern to McFadzean was intended to convey the Curby water rights, because Mattern had not connected himself with these water rights or acquired any right thereto by virtue of his patent, as we have hereinbefore demonstrated. Neither was the court justified in saying that Mattern attempted in 1904 to convey these two water rights to the plaintiff; nor in the statement in the finding that the court would presume that Mattern had the like possession of the water or use to the water because no one then was adversely claiming them. There is no justification in the evidence for such findings. The court was no more justified in presuming, without proof, that the plaintiff had possession of the water rights, than he was in presuming, without proof, that he was in possession of the land at the time he conveyed to Trujillo. Aside from the foregoing the evidence is too uncertain and contradictory in behalf of the plaintiff to sustain any decree in his favor. For these reasons the decree of the district court must be and it is reversed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE ADAMS and MR. JUSTICE BUTLER concur.