**No. 26618**

**R. D. Dwyer v. District Court, Sixth Judicial District, State of Colorado, and the Honorable Frederic B. Emigh, District Judge**

(532 P.2d 725)

Decided March 10, 1975.

Atler, Zall and Haligman, Jack Silver, for petitioner.

Hamilton, Sherman, Hamilton & Shand, P.C., E. B. Hamilton, Sr., for respondents.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

This is an original proceeding brought pursuant to C.A.R. 21 to prohibit the District Court of La Plata County from exercising *in personam* jurisdiction over the petitioner.

Petitioner Dwyer, a resident of the State of Texas, and one Leighton Roberts, the plaintiff in the district court, allegedly entered into a contract whereby petitioner agreed to purchase from Roberts land located in San Juan County, Colorado. The contract, dated October 30, 1973, was prepared in Colorado and signed by the petitioner in Texas on November 5, and by Roberts in Arizona on November 8. Petitioner had come to Colorado during the fall of that year prior to the execution of the contract, and at that time viewed the land, informed the real estate broker that he intended to go forward with the transaction, and requested that the broker arrange for an engineering firm to conduct a preliminary survey to include:

(a) a determination of how many acres of land would be usable to him within the scope of his plans for development,

(b) soil tests and analysis and a geological study,

(c) a survey concerning available water supply,

(d) a survey concerning sewage disposal facilities,

(e) an aerial survey,

(f) the preparation of a map with two foot contour intervals.

Pursuant to this request, and with petitioner's agreement, the Denver firm of Parker & Associates, consulting engineers, was employed. The report was submitted to petitioner, and he paid approximately $15,000 for the survey.

Shortly thereafter, it is alleged that Dwyer declined to perform the contract to purchase the land, and as a result, this lawsuit was commenced in the La Plata County District Court. The summons and complaint were served on the petitioner in Texas pursuant to 1965 Perm. Supp., C.R.S. 1963, 37-1-27,[1] whereupon he moved to quash the summons on the ground that the Colorado court could not exercise jurisdiction over him.

The district court denied the motion, holding that petitioner was subject to the court's jurisdiction by virtue of the fact that the cause of action arose out of the "ownership, use, or possession of any real property situated in this state." 1965 Perm. Supp., C.R.S. 1963, 37-1-26.[2] Dwyer then petitioned this Court for a writ of prohibition, and we issued a rule to the respondent court to show cause why the writ should not issue. For the reasons set forth herein, we now discharge the rule.

Petitioner contends that the Colorado court cannot, consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution, exercise personal jurisdiction over him since he had insufficient contact with this state. Respondent maintains that the reach of the Colorado Long Arm statute, 1965 Perm. Supp., C.R.S. 1963, 37-1-26, extends to petitioner in this case, and exercise of jurisdiction over him is consistent with the protections afforded by the due process clause. We agree.

The Colorado Long Arm statute in relevant part provides as follows:

---

[1]Now Section 13-1-125, C.R.S. 1973.
[2]Now Section 13-1-124, C.R.S. 1973.

"37-1-26. Jurisdiction of courts — (1)(a) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person, and, if a natural person his personal representative, to the jurisdiction of the courts of this state, concerning any cause of action arising from:

(b) The transaction of any business within this state;

(d) The ownership, use, or possession of any real property situated in this state.''

■ In *Safari Outfitters, Inc. v. Superior Court,* 167 Colo. 456, 448 P.2d 783, we stated that in enacting the Colorado Long Arm Statute, ''our legislature intended to extend the jurisdiction of our courts to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.'' 448 P.2d at 784. Therefore, the only question which we must determine is whether exercise of jurisdiction over the petitioner comports with the protection of the due process clause. Resolution of that question turns on whether the petitioner had certain minimum contacts with the state, ''such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'' *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). That in turn depends on whether he ''purposely avails (himself) of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws,'' *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

In *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, the Court found that the due process clause was not offended when California exercised jurisdiction over a Texas corporation where the corporation's sole contact with California was a single contract which had a ''substantial connection with that state.'' 355 U.S. at 223. In the wake of *McGee,* many state and federal courts have upheld the exercise of jurisdiction over defendants where their contact with the forum state, although quantitatively minimal, was of substantial import and relevance to the subject of the lawsuit. *See Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 256 N.E.2d 506; *White Lumber Sales Inc. v. Sulmonetti,* 252 Or. 121, 448 P.2d 571; *Kropp Forge Co. v. Jawitz,* 37 Ill. App.2d 475, 186 N.E.2d

76; *Sporcam v. Greenman Bros., Inc.,* 340 F.Supp. 1168 (S.D. Iowa).

In *Knight v. District Court,* 162 Colo. 14, 424 P.2d 110, we reviewed various long-arm cases similar to those cited above and concluded that

"These several cases, among other things, stand for the proposition that even though the 'last act', such as the signing of a contract, for example, may have occurred outside the geographical confines of the forum state, nevertheless the statutory test of a claim arising out of the transaction of any business within the state may still be met by the showing of *other* 'purposeful acts', performed within the forum state by the defendant in relation to the contract, even though such acts were preliminary, or even subsequent, to the execution of the contract itself." 424 P.2d at 112-113 (emphasis in the original).

Here, although the contract was signed by both parties outside the state of Colorado, defendant's "purposeful acts" in this state, as well as other contacts associated with the contract were significant. He came to Colorado to view the property; he employed a Colorado firm of consulting engineers to conduct a survey of the property; the contract to purchase the property was prepared in Colorado; the real estate broker and the vendor of the property were both Colorado residents; and of utmost importance, the subject matter of the contract, the real estate, was located in Colorado thereby making Colorado the state with the greatest interest in the transaction.

Under Colorado law, the execution of a contract to purchase land renders an equitable conversion of the purchaser's contractual interest in the land into realty. *Konecny v. von Gunten,* 151 Colo. 376, 379 P.2d 158. The nature of such an equitable ownership substantially enhances the purchaser's contact with this state. Upon execution of the contract, Dwyer became entitled to many significant protections afforded by the laws of this state to owners of realty. Discussing this precise situation, the Supreme Court of Appeals of Virginia in *Carmichael v. Snyder,* 209 Va. 451, 164 S.E.2d 703, stated:

"The contract clothed Synder with an equitable estate or interest in the land he agreed to purchase from plaintiffs, thereby entitling him to the protection of the laws of this state and the machinery

which is provided incident to real estate transactions. These laws include the recording statutes; procedures to remove clouds on titles, quiet title to land, establish boundary lines; the zoning statutes and numerous others. Had plaintiffs refused to convey the property in accordance with their contract, defendant could have enforced specific performance. Had defendant decided to cancel, reform, or rescind his contract, a forum would have been provided for him to seek such relief.'' 164 S.E.2d at 706.

■ The transaction as a whole, defendant's activities in regard to it, and laws of this state which became applicable to it immediately upon the signing of the contract, certainly come within the orbit of the rule announced in *Hanson v. Denckla, supra,* which permitted jurisdiction where one has purposely availed himself of the privilege of conducting activities within a state thus invoking the benefits and protections of the laws of that state.

Furthermore, while ''fair play and substantial justice'' are elusive concepts, not susceptible to precise definition, we are in agreement with Professor Leflar when he states in his treatise on *American Conflicts Law* that

''Plaintiffs ought ordinarily be entitled to try their cases where the facts occurred, where witnesses reside and the local law is to be applied. This is in keeping with the 'fair play and substantial justice' standard that the *International Shoe* case laid down. It is less unfair to require a nonresident defendant to try his case where his voluntary activity brought the dispute into being than to require the plaintiff to try it only where he may later be able to get service on the defendant's person.'' R. Leflar, *American Conflicts Law* § 41, at p. 78 (1968).

Therefore, we find that subjecting the defendant to the jurisdiction of the respondent court under the circumstances here does not offend traditional notions of fair play and substantial justice.

The rule is discharged.