The **FIRST NATIONAL BANK OF WRAY**, Plaintiff–Appellee,

v.

George W. **McGINNIS**, Herbert Dean McGinnis, and Joseph T. Callahan, Defendants–Appellants.

No. 89CA2062.

Colorado Court of Appeals, Div. IV.

June 6, 1991.

Rehearing Denied Sept. 5, 1991.

Francis A. Benedetti, Wray, Haffke, Haffke and Lebsack, George R. Haffke, Fort Morgan, for plaintiff-appellee.

Arnold, Ross and Singer, Baxter W. Arnold, Sterling, for defendants-appellants.

Opinion by Judge CRISWELL.

Defendants, Herbert Dean McGinnis and George W. McGinnis, who are brothers, appeal from the decree of the trial court quieting title to certain real property in plaintiff, the First National Bank of Wray. The trial court based its decree upon § 38–41–108, C.R.S. (1982 Repl.Vol. 16A), the seven-year possession with "color of title" statute. Because we conclude that the bank has satisfied the requirements of this statute, we affirm.

At all times material to this controversy, the legal title to the disputed property has stood in George McGinnis' name. It is undisputed, however, that this status of the title was created for mere business convenience and that the beneficial owner of the property was George's brother, Dean.

In 1968, Dean executed a written contract for the sale of the property to Kenneth and Betty Rogers (contract purchasers). Pursuant to this agreement, the contract purchasers agreed to pay a sum of money upon execution of the contract and an additional sum at the end of that year. They also agreed to assume and pay the outstanding mortgage on the property.

The contract purchasers entered into possession of the property in 1968 and remained in possession until 1987, but they never were conveyed legal title to the prop-

erty. In 1987, they delivered a quitclaim deed to the property to the bank.

The bank instituted this action in 1988, alleging that the terms of the written agreement between Dean McGinnis and the contract purchasers had been fully performed, and thus, the bank was entitled to a decree quieting title. In the alternative, the bank alleged that it and the contract purchasers, its title predecessors, had been in sole, continuous, exclusive, and adverse possession of the property since 1971 when, following a dispute between Dean and the contract purchasers respecting the parties' rights and obligations under the written agreement, the contract purchasers had caused the written agreement to be recorded.

The defendants generally denied these allegations. They asserted, rather, that the contract purchasers had not made either of the monetary payments called for by the agreement and that, as a consequence, the agreement had been rescinded. They also asserted that the contract purchasers had continued in possession of the property merely as tenants under an oral lease agreement, pursuant to which they had made the monthly mortgage payments (including a pro-rated amount for ad valorem taxes) and had maintained the property in good repair.

The trial court resolved this factual dispute in the bank's favor, specifically finding that the contract purchasers had tendered or paid to the defendants all sums due under the written agreement. The court concluded, however, that it could not enter a decree for specific performance of the purchase agreement because any claim thereon was barred by the applicable statute of limitations. The bank has not challenged this ruling, either by cross-appeal or otherwise.

The trial court also concluded that the bank could not rely upon the general, 18-year, adverse possession statute, § 38–41–101, C.R.S. (1982 Repl.Vol. 16A), because the contract purchasers' possession of the premises could not be considered to have been "adverse" until the contract purchasers recorded the agreement in 1971 following their dispute with Dean. Thus, the period of limitations set forth in that statute had not run by the time the bank's action was filed.

However, concluding that the written agreement constituted "color of title" within the meaning of § 38–41–108, C.R.S. (1982 Repl.Vol. 16A), the seven-year statute, and that the contract purchasers' payments upon the encumbrance, which included a portion for the payment of taxes, constituted the payment of all taxes for a period of seven years, the court determined that the contract purchasers had perfected their title to the property pursuant to this statute. Thus, it entered a decree quieting title to the property in the bank, as their successor in interest.

## I.

Defendants first argue that the trial court erred in finding that the bank satisfied the elements of § 38–41–108 and, thus, in quieting title in the bank. We disagree.

Section 38–41–108, in relevant part, states:

> "Every person in actual possession of lands or tenements, under claim and color of title, made in good faith, who for seven successive years continues in such possession and also during said time pays all taxes legally assessed on such lands or tenements shall be held and adjudged to be the legal owner of said lands and tenements to the extent and according to the purport of his paper title."

Defendants argue, nevertheless, that the evidence presented to the trial court was insufficient because: (1) the contract purchasers' possession was not under "color of title," (2) they did not make an adequate showing of "good faith" because their possession was not, in fact, adverse, and (3) the payment of a pro rata portion of the taxes by means of the monthly mortgage payment did not constitute the payment of taxes for purposes of the statute.

## A.

Defendants first argue that a sales contract can never give rise to "color of title" to a parcel of real estate. However, we conclude that if, as here, a purchaser under an executory sales contract has complied with all the requirements of that contract, so as to entitle him to a conveyance of legal title, the contract will, at that point at least, constitute color of title for purposes of the seven-year statute.

Color of title is defined as that which in appearance has the semblance of title, either legal or equitable, but which in fact is no title. *Sullivan v. Scott*, 73 Colo. 451, 216 P. 515 (1923); *Marvin v. Witherbee*, 63 Colo. 469, 168 P. 651 (1917). Thus, color of title "can only arise out of a conveyance purporting to convey title" to real property, but which, because of some defect, fails to do so. *Sayre v. Sage*, 47 Colo. 559, 108 P. 160 (1910).

A variety of instruments have been found to provide color of title under the present seven-year statute or its predecessors. *See O'Reilly v. Balkwill*, 133 Colo. 474, 297 P.2d 263 (1956) (sheriff's deed obtained upon judgment and levy of execution); *Langley v. Young*, 75 Colo. 44, 224 P. 231 (1924) (tax deed acknowledged by state treasurer); *Whitehead v. Desserich*, 71 Colo. 327, 206 P. 384 (1922) (defective deed); *Latta v. Clifford*, 47 F. 614 (C.C.D.Colo.1891) (warranty deed).

Further, the execution of a contract to purchase land causes an equitable conversion of the purchasers' contractual interest into an equitable interest in the realty itself. *Dwyer v. District Court*, 188 Colo. 41, 532 P.2d 725 (1975); *Bent v. Ferguson*, 791 P.2d 1241 (Colo.App.1990). Thus, the purchaser under an executory contract for the conveyance of property becomes the equitable owner of the land sufficient to enable him to maintain a quiet title action. *Bent v. Ferguson, supra; Jacquez v. Jacquez*, 694 P.2d 1292 (Colo. App.1984). *See Dwyer v. District Court, supra.*

Here, the contract of sale was originally executory in nature because the contract purchasers were not entitled to receive a deed to the property until they had tendered the two payments and assumed the mortgage liability, as required by the contract terms. Nevertheless, at the time of the execution of the agreement, the contract purchasers became the equitable owners of the land in question.

Further, the court found, with record support, that the contract purchasers made or tendered all payments required by the contract and assumed liability for the outstanding loan on the property. At that point, therefore, the contract purchasers were entitled to a conveyance of legal title from defendants, and they could have maintained a quiet title action against them. Consequently, at least at the point when the contract became fully executed by the contract purchasers, entitling them to a conveyance of legal title, the sales contract constituted "color of title" under the pertinent statute.

## B.

Defendants next argue that the bank did not prove that its claim of title had been made in good faith. Because the initial entry of the contract purchasers onto the property was permissive, defendants argue that there was no specific time or event when their occupancy became adverse to defendants' title; therefore, they argue, assertion of a claim of title could not be made in good faith. In support of this argument, they cite such cases as *Kelly v. Mullin*, 159 Colo. 573, 413 P.2d 186 (1966) (if entry is permissive, a disclaimer must be made before statute of limitations begins to run) and *Lovejoy v. School District No. 46*, 129 Colo. 306, 269 P.2d 1067 (1954) (statute does not begin to run as against a rightful owner until the adverse claimant disavows his possession as being in subservience to rightful owner and sets up an exclusive right in himself by some clear, positive, and unequivocal act). We reject this assertion.

Unlike § 38–41–101, the 18–year statute, § 38–41–108, the color of title statute, does not contain any explicit requirement that the possession referred by that statute must be "adverse." Nevertheless, it has

generally been assumed that possession under this statute must be of such a character, *see Warren v. Adams*, 19 Colo. 515, 36 P. 604 (1891), and both the parties to this litigation and the trial court have engaged in the same assumption. Hence, our opinion shall, likewise, assume, without deciding, that such adversity of possession is a requirement under this statute.

■ If a purchaser under an executory land sales contract complies with all requirements entitling him to the delivery of a deed, but the rightful owner refuses to convey, the purchaser's possession, at that point, becomes adverse to the owner. *Cf. Leo Egan Land Co., Inc. v. Heelan*, 210 Neb. 263, 313 N.W.2d 682 (1981) (purchaser's possession under executory sales contract is not adverse until full performance by purchaser or until a distinct and unequivocal repudiation of his vendor's title has been brought either expressly or by implication to the vendor's knowledge); *Rhorer v. Rhorer's Executor*, 272 S.W.2d 801 (Ky.1954) (vendee under executory sales contract cannot hold adversely until he has performed the contract conditions or repudiated the vendor's title). *See also Paap v. Von Helmholt*, 185 Cal.App.2d 823, 8 Cal.Rptr. 568 (1960) (purchaser in default under executory contract who continues in possession after notice of cancellation is adverse claimant).

Here, the court found that, after their demand for conveyance of title in 1971 had been refused by defendants, the contract purchasers remained in possession of the property and continued to assert their claim to it. In addition, they recorded the sales contract, paid taxes on the property for the statutory period, and made improvements and other substantive changes to the premises, which actions were inconsistent with defendants' title. Based on these circumstances, the court found that the contract purchasers' possession became adverse when they recorded the contract of purchase.

■ Whether a party claiming under color of title has asserted his claim in good faith is a question of fact for the trial court. *Jackson v. Larson*, 24 Colo.App.

548, 136 P. 81 (1913). Here, there is record evidence to support the court's finding of good faith. Thus, that finding will not be disturbed on appeal. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

## C.

Defendants also argue that the proof did not establish that the contract purchasers had paid the realty taxes for the requisite period. This argument is premised on the fact that the contract purchasers' payment of the taxes was made by means of the payment to the mortgage holder of a pro rated amount of taxes into an escrow account and the later payment by the mortgage holder to the county treasurer. Defendants assert that, because both the account with the mortgage holder and the treasurer's records continued to show George McGinnis as the owner of the property, these payments were made to his credit and not on behalf of the contract purchasers. We disagree.

■ A party claiming under color of title must pay the taxes during the period of time that he is in possession. *Bowers v. McFadzean*, 82 Colo. 138, 257 P. 361 (1927). However, a party in possession may show that taxes paid in another's name were, in fact, paid by him. *Langley v. Young*, 72 Colo. 466, 211 P. 640 (1922).

■ Here, the escrow account with the mortgagee was established several years before the contract purchasers entered into possession. Under the land sales agreement, the contract purchasers assumed payments on the outstanding mortgage. In addition, the evidence was that the mortgagee always billed the contract purchasers, not the defendants, for the mortgage payments.

Hence, there is sufficient evidence to support the trial court's finding that the bank and its predecessors in interest paid all the taxes, even though the payments were made out of an escrow account in one defendants' name. *See Langley v. Young, supra.*

## II.

Defendants also contend that the court erred in excluding several exhibits from evidence at trial. We conclude, however, that the exclusion of these exhibits, if error, was harmless.

The erroneous exclusion of evidence will result in reversal only if a substantial right of a party is affected. C.A.R. 35(e). And, an error affects a substantial right only if it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the fairness of the trial itself. *Banek v. Thomas,* 733 P.2d 1171 (Colo.1986).

Here, the court refused one of the disputed exhibits on the grounds that it was duplicative, in that one of the defendants had already testified fully as to its substance. Further, the court noted that it, as the fact finder, did not credit the defendants' testimony and that the proffered exhibits would have done nothing to change its view. Hence, we conclude that the exclusion of these documents, even if error, did not affect any of defendants' substantial rights.

## III.

Finally, defendants argue that the court erred in allowing the bank's attorney, who was co-counsel at the trial, to give rebuttal testimony on its behalf in alleged violation of the Code of Professional Responsibility DR 5–102, which requires counsel to withdraw from representing a client in litigation if counsel discovers that he will be presented as a witness on the client's behalf. We conclude that allowing such testimony did not constitute prejudicial error.

A motion to disqualify an attorney pursuant to DR 5–102 must set forth specific facts which point to a clear danger that either prejudices counsel's client or his adversary. *People ex rel. Woodard v. District Court,* 704 P.2d 851 (Colo.1985).

In this case, the attorney was the attorney for one of the contract purchasers in 1971. At trial, defendants moved to exclude his testimony because it allegedly violated Code of Professional Responsibility DR 5–102. They also argued that defendants were surprised by the testimony and, thus, were unable to depose the attorney.

The court ruled that, because of the distinctive value of the attorney's testimony, it would work a substantial hardship on the client if the attorney were not permitted to testify. Therefore, the court overruled the objection, in accord with Code of Professional Responsibility DR 5–101(B)(4), and allowed the attorney to testify.

Under these circumstances, we conclude that the trial court did not abuse its discretion. In addition, the record does not show that this testimony had a substantial effect upon the result. Thus, any possible error in permitting this testimony could not be considered to be prejudicial. *See* C.A.R. 35(e), *Banek v. Thomas, supra.*

Judgment affirmed.

MARQUEZ and DAVIDSON, JJ., concur.