SGI AIR HOLDINGS II LLC, Plaintiff,

v.

NOVARTIS INTERNATIONAL, AG,
and Novartis AG, Defendants.

No. CIV.A.01–WY–1983–CB.

United States District Court,
D. Colorado.

March 21, 2002.

Michael H. Berger, Scot Melvin Peterson, Koff, Corn & Berger, PC, Denver, CO, for SGI Air Holdings II LLC.

Walter W. Garnsey, Jr., David Richard Fine, Kelly/Haglund/Garnsey & Kahn, LLC, Denver, CO, Paul Howard Schwartz, Cooley, Godward, LLP, Broomfield, CO, Andrew Keith Solow, Kay Scholer, LLP, New York, NY, for Novartis Intern., AG., Novartis AG.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

BRIMMER, District Judge.

This case arises out of claims made by Plaintiff, SGI Air Holdings II LLC against Defendants Novartis International, AG and Novartis, AG for a breach of contract relating to the sale of an airplane. The case is now before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) and Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted pursuant to Fed.R.Civ.P. 12(b)(6). After reading the briefs, hearing oral argument and being fully advised of the premises, the Court **FINDS** and **ORDERS** as follows:

### *Statement of Parties and Jurisdiction*

Plaintiff SGI Holdings II LLC ("SGI") is a limited liability company organized under the laws of the state of Delaware. SGI has its principal place of business in Denver, Colorado. Defendant Novartis AG is a Swiss holding company with its principal place of business in Basel, Switzerland. Defendant Novartis International, AG is a Swiss Corporation with its principal place of business in Basel, Switzerland. Novartis International, AG manages the day-to-day activities of Novartis AG. Plaintiff asserts that jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, based on diversity of citizenship of the parties and as the amount in controversy is over $75,000. As discussed below, Defendants contend that the Court lacks personal jurisdiction over them.

### *Background*

In the Summer of 2001, Marino Buser, Novartis International's Head of Purchasing, whose office is in Basel, Switzerland retained Aerospace Concepts of Canada ("Aerospace") to act as a broker for the negotiation and potential purchase of a corporate jet aircraft. Aerospace assigned Thomas Chapman, whose office is in Savannah, Georgia to be the primary broker on the deal. Chapman found an advertisement from Plaintiff in his files, and also looked at an internet advertisement for the Bombardier Global Express Jet Aircraft ("Aircraft"), owned by Plaintiff.

In the course of his investigation, Chapman found that the Aircraft was built in Canada and then shipped to Seattle, Washington for completion of the interior. An Aerospace employee inspected the Aircraft at the facility in Seattle, where the Aircraft remained during the period of time applicable for the purposes of this case. The Aircraft itself was never in Colorado.

On June 27, 2001, Buser in Basel, Switzerland authorized Chapman to submit a written offer to Plaintiff for the Aircraft. Chapman did so by fax from his office in Savannah, Georgia. The offer was sent to J. Mesinger Corporate Jet Sales, Inc., Plaintiff's Colorado-based broker and agent. On June 30, 2001, Mesinger, acting

on behalf of Plaintiff, responded with a counteroffer sent by fax to Buser in Switzerland. The counteroffer listed a price of $42 million for the Aircraft, subject to terms and conditions as listed in the counteroffer, including an initial $10 million deposit to be put "in a mutually agreeable U.S. aircraft escrow service" which was not necessarily in Colorado. On July 2, 2001, Buser signed the counteroffer on the line entitled "accepted" and faxed it back to Mesinger. Ten days later, Novartis International's attorney, George Miller, faxed Mesinger a letter from Switzerland which indicated that Novartis International did not wish to proceed with the purchase and that they would not be making the initial deposit as required in the counteroffer.

Plaintiff brings this suit alleging that Novartis International, on behalf of its parent corporation, Novartis AG, breached the contract for the purchase of the Aircraft and is liable for damages as a result of the breach. For the purposes of this Order, the Court will only comment on the facts as necessary to decide the issue of personal jurisdiction. As the Court does not find that it has jurisdiction over the Defendants, it will not pass on the merits of Plaintiff's claim, and additional facts related thereto are omitted.

Defendants allege that neither Novartis International nor Novartis AG: 1) owns or leases any property in Colorado; 2) has any offices or employees in Colorado; 3) is authorized, qualified or registered to do business in Colorado; 4) has a registered agent for service in Colorado; 5) has otherwise consented to the exercise of personal jurisdiction by the courts of Colorado; or 6) has insured any person, property or risk in Colorado. Plaintiff does not generally dispute these statements.

## Discussion

■ To establish personal jurisdiction in a diversity case, a plaintiff must show both that jurisdiction is proper under the forum state's long-arm statute and that exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution. *See Equifax Services, Inc. v. Hitz,* 905 F.2d 1355, 1357 (10th Cir.1990). For the first step of the analysis, the Court turns to Colorado's long-arm statute, which establishes personal jurisdiction over defendants who, either in person or by an agent, engage in various activities within the state including the transaction of business and the commission of a tortious act. *See* Colo.Rev. Stat. § 13–1–124(1)(a)–(b) (1999). Under Colorado law, this Court may exercise personal jurisdiction to the full extent of the Due Process Clause of the Fourteenth Amendment. *See Dart International, Inc. v. Interactive Target Systems, Inc.,* 877 F.Supp. 541, 543 (D.Colo.1995) (citing *Safari Outfitters, Inc. v. Superior Court,* 167 Colo. 456, 448 P.2d 783 (1968)).

Therefore, the Court's analysis collapses into a single inquiry as to whether the exercise of personal jurisdiction over Defendant comports with due process. Federal, and not state law, guides the due process analysis. *National Business Brokers, Ltd. v. Jim Williamson Productions, Inc.,* 115 F.Supp.2d 1250, 1253 (D.Colo. 2000), *aff'd* 2001 WL 912796 (10th Cir. 2001). *See also Cubbage v. Merchent,* 744 F.2d 665, 667 (9th Cir.1984). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. State of Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95

(1945)). To comport with due process limitations, a court may exercise personal jurisdiction only over defendants that have "certain minimum contacts [with the jurisdiction] . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

This minimum contacts standard may be satisfied in either of two ways—general or specific jurisdiction. *See Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir.1996). The court's duty is the same in exercising either general or specific jurisdiction, it must guarantee that the exercise of jurisdiction "'does not offend traditional notions of fair play and substantial justice.'" *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (quoting *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154) (internal quotation omitted).

## 1. General Jurisdiction

■ General jurisdiction exists when a defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 & n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

In the case at bar, Plaintiff asserts that the Court may exercise both general and specific jurisdiction over Defendants. Plaintiff alleges that Defendants have contacts with Colorado that are so continuous and systematic that this Court may exercise general jurisdiction over Defendants. Plaintiff supports this allegation with statements that Novartis sells pharmaceuticals and other products all over the world, including Colorado, and does business through more than 150 subsidiaries, five of which are authorized to do business in Colorado, and one which has its principal place of business in Broomfield, Colorado. *See* Plaintiff's Response to Motion to Dismiss, p. 9. Plaintiff has alleged only limited contacts with Colorado by Defendants themselves. "For general jurisdiction, the defendant's contacts with the state must be greater than those required for specific jurisdiction." *Kuenzle*, 102 F.3d at 458 (citing *Doe v. National Medical Services*, 974 F.2d 143, 146 (10th Cir. 1992)). Thus, Plaintiff is basing its assertion that the Court has general jurisdiction over Defendants not on Defendants' own continuous and systematic contacts with Colorado, but on Defendants' subsidiaries' continuous and systematic contacts with Colorado. In addition to the above statements, Plaintiff attached a statement by Claudia Jones that shows that she found products made by Defendants' subsidiaries, such as Gerber baby foods, Ovaltine, Triaminic, Theraflu, Tavist and Desenex on the shelves of two grocery stores in Denver, Colorado. Plaintiff also attached a recent filing made by Defendants with the Securities and Exchange Commission, which reflects that it owns stock of many subsidiaries throughout the world. Plaintiff relies on these assertions to show that Defendants are present in the forum and subject to the forum's jurisdiction as they are not engaging in "mere solicitation" but instead doing business which is "sufficiently important to the foreign corporation that if it did not have a representative to perform them, the [foreign] corporation's own officials would have to perform substantially similar services." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 423 (9th Cir.1977)

The Court is not bound by the cases primarily relied upon by Plaintiff. *See* Plaintiff's Response to Motion to Dismiss,

pps. 9—12, citing *Wells Fargo & Co.*, 556 F.2d 406; *Energy Reserves Group, Inc. v. Superior Oil Co.*, 460 F.Supp. 483 (D.Kan. 1978). It is also unclear that even were this binding precedent, Defendants would be amenable to the jurisdiction of this Court, as Plaintiff seems to be misconstruing the business that Defendants actually engage in. Plaintiff asserts that Defendants' subsidiaries act as agents of Defendants in carrying out Defendants' business of selling substantial quantities of merchandise to Colorado consumers. *See* Plaintiff's Response to Motion to Dismiss, p. 10. However, Plaintiff also claims that "Novartis AG, the parent, apparently neither manufactures nor sells anything, even though Novartis AG is primarily a manufacturing company. Instead, its products are manufactured, distributed and sold by more than 150 subsidiaries located throughout the world including in Colorado. Thus, it can be fairly said that Novartis AG cannot carry on its fundamental purposes—the manufacture of pharmaceuticals and food—without its agents and its various subsidiaries." *See* Plaintiff's Response to Motion to Dismiss, p. 11. Either Novartis AG is a manufacturer or is not. Plaintiff states that Novartis AG is a manufacturer that does not manufacture, distribute or sell anything. This statement is logically inconsistent, and merely an insufficient attempt to assert that the Court has jurisdiction due to the activities of Defendants' subsidiaries when jurisdiction otherwise does not exist.

■ Plaintiff misconstrues Defendants' business ventures. Plaintiff accepts Defendants' statement that Novartis AG is a holding company and Novartis International simply manages the day-to-day activities of Novartis AG. *See* Plaintiff's Response to Motion to Dismiss, p. 3. The business of a holding company is not to direct the day to day activities of its subsidiaries, but instead to hold the stock of companies, from which it derives profits.

The relationship of a holding company and the subsidiaries of which the holding company owns stock is not of a nature to support an agency relationship, or consequently, personal jurisdiction over the holding company or its day-to-day managing company. A similar situation existed in *Quarles v. Fuqua Industries, Inc.*, 504 F.2d 1358 (10th Cir.1974), where a parent holding company which did not have continuous and systematic contacts with the forum state itself was found not to be subject to personal jurisdiction in the forum state on the basis of the activities of a subsidiary of which the holding company owned stock. The holding company was "engaged in diversified corporate investments." *Quarles*, 504 F.2d at 1364. The subsidiary was engaged in its own business of adult vocational training, and did not engage in the parent's business of diversified corporate investments. *Id.* Therefore, since the court found that the parent "acted only in keeping with its stockholder interest" and "one company's exercise over a second corporation of a controlling influence through stock ownership does not make the second corporation an agent of the first," there was no general jurisdiction over the parent company. *Id.* at 1364–65; *Colcord v. Armstrong World Industries, Inc.*, 1985 WL 17481, at *3 (D.Colo.1985)(It is the general rule that a holding or parent company has a separate corporate existence and is treated separately from its subsidiary in the absence of circumstances justifying the disregard of the corporate entity). *See also Gallagher v. Mazda Motor of America, Inc.*, 781 F.Supp. 1079, 1085 (E.D.Pa.1992)(In the case of a holding company, the subsidiary is not performing a function that the parent would otherwise have had to perform itself, the holding company could simply hold another type of subsidiary, and imputing jurisdictional contacts would consequently be improper); *Savin Corp. v. Heritage Copy Products,*

*Inc.,* 661 F.Supp. 463 (M.D.Pa.1987); *Akzona Inc. v. E.I. Du Pont De Nemours & Co.,* 607 F.Supp. 227 (D.Del.1984).

The Court's exercise of general jurisdiction over Defendants on the acts of Defendants' subsidiaries is a subject which has not been directly examined in the case law to any satisfactory degree. Generally, "as the Court in *International Shoe* explained, a nonresident corporate entity creates contacts for personal jurisdiction purposes through its authorized representatives: its employees, directors, officers and agents." *Kuenzle v. HTM Sport–Und Freizeitgerate AG,* 102 F.3d 453, 458 (10th Cir.1996)(citing *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154) (a corporation's presence, for personal jurisdiction purposes, is "manifested only by activities carried on in its behalf by those who are authorized to act for it").

▆▆ "An agency relationship arises from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Filho v. Rodriguez,* 36 P.3d 199, 200 (Colo.App. 2001) (quoting *City & County of Denver v. Fey Concert Co.,* 960 P.2d 657, 660 (Colo. 1998); Reuschlein & Gregory, The Law of Agency and Partnership § 2, at 4 (2d ed.1990)). "Such a relationship cannot be presumed but must be clearly demonstrated." *Shepherd v. United States Olympic Committee,* 94 F.Supp2d 1136, 1142 (D.Colo.2000) (citations omitted). The plaintiff bears the burden of establishing personal jurisdiction over a defendant and thus of making at least a prima facie showing that an agency relationship exists. *Shepherd,* 94 F.Supp.2d at 1142, citing *Kuenzle,* 102 F.3d at 459 (holding defendant, a foreign manufacturer, was not subject to the personal jurisdiction of a Wyoming court because the plaintiff failed to introduce sufficient evidence to establish an agency relationship between the defen-

dant and its U.S. distributor). "A holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity." 18 Am.jur.2d Corporations § 17 (1965). The mere presence in Colorado of a wholly owned subsidiary, standing alone, does not in and of itself subject the absent parent corporation to the state's jurisdiction, where the two companies are operated as distinct entities. *Bolger v. Dial–A–Style Leasing Corp.,* 159 Colo. 44, 409 P.2d 517, 519 (1966)(citing *Canon Manufacturing Co. v. Cudahy Packing Co.,* 267 U.S. 333, 336, 45 S.Ct. 250, 69 L.Ed. 634 (1925)). "Circumstances justify disregard of the corporate entity if separation of the two entities has not been maintained and injustice would occur to third parties if the separate entity were recognized." *Quarles,* 504 F.2d at 1362 (citing *Garden City Co. v. Burden,* 186 F.2d 651 (10th Cir.1951)).

▆▆ Plaintiff asserts that Defendants' 150 plus subsidiaries engage in the manufacture, distribution and sale of pharmaceuticals and food throughout the world, including Colorado. This statement is not sufficient to show entanglement. If anything, this statement shows the separation of the duties of the subsidiaries. Defendants, as explained above, hold stock of the subsidiaries. Plaintiff has not made any showing that Defendants play a daily part in the actual business of its subsidiaries that do business in Colorado. In *Flank Oil Co. v. Continental Oil Co.,* 277 F.Supp. 357, 363 (D.Colo.1967), Judge Doyle said: "Cases such as *Steinway* (*Steinway v. Majestic Amusement Co.,* 179 F.2d 681 (10th Cir.1949), *cert. denied,* 339 U.S. 947, 70 S.Ct. 802, 94 L.Ed. 1362 (1950)) properly discount formal separations of function and subtle efforts to maintain distinct corporate entities. The effort is to ascertain

from the total facts the extent of actual control exercised by the parent over the internal affairs of its subsidiary ...." *Flank Oil,* 277 F.Supp. at 363. Plaintiff has failed to assert any facts on which this Court could find that it should exercise general jurisdiction over Defendants on the basis of control exerted over its subsidiaries. As stated above, Defendants hold the stock of the subsidiaries, while the subsidiaries manufacture, distribute and sell pharmaceuticals, food and various other products, as reflected in the Defendants' SEC filings included with Plaintiff's pleadings.

Plaintiff also alleges that Defendants were acting as agents for their subsidiaries in the purchase of the plane, in that the Aircraft was to be purchased to meet the demand for trans-Atlantic flights, and thus, Defendants are subject to the jurisdiction of the Court. *See* Plaintiff's Response to Motion to Dismiss, p. 10. The fact that Defendants needed a plane for trans-Atlantic flights does not show that Defendants were acting as agents for their subsidiaries. Needing a plane to check up on one's investments hardly rises to the level of an agency relationship contemplated in the case law. Thus, this case is distinguishable from *Behagen v. Amateur Basketball Association of the United States of America,* 744 F.2d 731, 734 (10th Cir.1984), *cert. denied* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985), where the court refused to dismiss a case on the basis of an absence of personal jurisdiction over the international association, which was located in Germany, because it maintained continuous and substantial activity in Colorado through actions taken *on its behalf* by its members. Plaintiff's simple statement that the Aircraft was to be purchased in response to a demand for trans-Atlantic flights is not enough to show that Defendants performed any continuous and substantial activity taken in Colorado *on behalf of* their subsidiaries.

Plaintiff asserts that it is not arguing that alter ego principals should subject Defendants to personal jurisdiction. Plaintiff also does not mention piercing of the corporate veil to hold Defendants liable in Colorado. "Alter ego is one theory for disregarding the corporate entity, or piercing the corporate veil. Piercing the corporate veil is an equitable remedy, requiring balancing of the equities in each particular case." *Great Neck Plaza, L.P. v. Le Peep Restaurants, LLC,* 37 P.3d 485, 490 (Colo. App.2001). Plaintiff states that it is not using alter ego or veil piercing theories, though findings of jurisdiction can sometimes rest on these theories. *See generally, Camellia City Telecasters, Inc. v. Tribune Broadcasting Company, Inc.,* 1984 WL 782 (D.Colo.1984)(piercing the corporate veil); *Colcord v. Armstrong World Industries, Inc.,* 1985 WL 17481 (D.Colo.1985)(alter ego). Thus, the Court need not examine such theories.

Plaintiff has failed to allege facts upon which the Court may assert general jurisdiction over Defendants. Defendants themselves do not engage in any continuous and systematic contact with Colorado. Defendants' subsidiaries do engage in continuous and systematic contact with Colorado, but absent some showing that Defendants exert some control over the day to day activities of Defendants' subsidiaries, or a showing of entanglement, this Court cannot base general jurisdiction of Defendants on the activities of their subsidiaries. Since Plaintiff has failed to make the requisite showing of availment, the Court does not have general personal jurisdiction over Defendants.

**2. Specific Jurisdiction**

In the alternative, Plaintiff asserts that if general jurisdiction does not exist, this Court may assert specific jurisdiction over Defendants. Specific jurisdiction, based

on a matter occurring in the forum state, exists when the defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1532–33 (10th Cir.1996)(quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). "Purposeful availment requires actions by the Defendant which 'create a substantial connection with the forum state.'" *OMI Holdings, Inc. v. Royal Insurance Co.*, 149 F.3d 1086 (10th Cir.1998) (quoting *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

Plaintiff alleges that Defendant contacted Plaintiff's Colorado agent to inquire about the Aircraft. After the initial contact, there were various phone, email, and fax communications. Defendants' representative signed a contract for the purchase of the Aircraft, which is the basis of this law suit. Defendants' representative faxed the signed contract back to Plaintiff's agent in Colorado.

■ Plaintiff alleges that the single transaction between the parties, the disputed contract for sale of the Aircraft, subjects Defendants to the jurisdiction of this Court. However, the law is clear that a party does not submit itself to personal jurisdiction in a distant forum simply by entering into a contract with a party that resides in that forum. *See Ruggieri v. General Well Service, Inc.*, 535 F.Supp. 525, 535 (D.Colo.1982) ("Jurisdiction is not proper in Colorado merely because one of the parties to the contract [is] a Colorado resident."). Even in cases where the defendant enters the forum state to discuss some of the details of the contract, personal jurisdiction has not been found. *See Associated Inns & Restaurant Co. v. Development Associates*, 516 F.Supp. 1023,

1026 (D.Colo.1981). Plaintiff does not allege that Defendants visited Colorado for the purpose of discussing the sale of the Aircraft, so there is even less likelihood that personal jurisdiction can be found in the case at bar.

■ Colorado courts have previously refused personal jurisdiction over out-of-state defendants on the basis of insufficient minimum contacts where those defendants have entered into and allegedly breached a contract with a Colorado resident. *National Business Brokers*, 115 F.Supp.2d at 1254–55; *Automated Quill, Inc. v. Chernow*, 455 F.Supp. 428 (D.Colo. 1978) (defendants did not come into Colorado for either negotiations or execution of agreement in question; did not initiate any activity peculiar to Colorado which was undertaken on defendants' behalf; agreement in question was not issued in conjunction with any other Colorado activity; defendants' activities are not specifically directed to Colorado; there is no evidence that defendants maintained an agent within the State of Colorado, a place of business, employees, a bank account, any subsidiaries which do business within the state, exercise ownership over any real or personal property within the state). The *Automated Quill* court concluded that defendants had not personally availed themselves of the privilege of conducting activities in Colorado after considering all of the surrounding circumstances. *Automated Quill*, 455 F.Supp. at 432. Such is the case here. Except for the coincidence that Plaintiff and its broker were in Colorado, Defendants did not initiate any activity which was peculiar to Colorado, did not visit Colorado in connection with the transaction, did not personally conduct other business in Colorado, and did not own property on their own behalf in Colorado. Additionally, Defendants' agent in Savannah, Georgia initially used the Internet to

look at the Aircraft, which could have made contact anywhere in the whole world. Under these circumstances, Defendants did not personally avail themselves of the privilege of conducting activities in Colorado which would subject them to specific personal jurisdiction in this Court.

■ Plaintiff does not allege that Defendants ever entered Colorado in connection with the sale of the Aircraft, or that the Aircraft itself was ever in Colorado. The initial $10 million deposit on the Aircraft was to be put "in a mutually agreeable U.S. aircraft escrow service" which was not necessarily in Colorado. Further, Plaintiff fails to allege that Defendants had any other contact, except through their subsidiaries, as dealt with above, with Colorado. Defendants' own minor contacts with Colorado in connection with the purchase of the Aircraft hardly rise to the level of a substantial connection with Colorado in order to invoke this Court's jurisdiction over the Defendants. To exercise personal jurisdiction over Defendants would offend traditional notions of fair play and substantial justice, even taking all Plaintiff's specific jurisdiction assertions as true. Negotiations conducted over various electronic devices, in the absence of further contact, do not rise to the level of purposeful availment contemplated by the courts.

Two cases which Plaintiff relies on to subject Defendants to the specific personal jurisdiction of the Court are particularly telling. *See* Plaintiff's Response to Motion to Dismiss, p. 21. Plaintiff asserts that these cases are similar to the one at bar, however, there are noticeable factual differences. Plaintiff cites *Dwyer v. District Court, Sixth Judicial District*, 188 Colo. 41, 532 P.2d 725 (1975) as "finding the facts that the contract to purchase the property in question was prepared in Colorado, and that both the broker and the seller of the property were Colorado resi-

dents, to be significant factors in exercising personal jurisdiction over an out of state defendant." *See* Plaintiff's Response to Motion to Dismiss, p. 21. Plaintiff neglects to mention that the *Dwyer* court also found it significant that the purchaser went to Colorado to view the real property which was the subject of the contract, and also that the contract entitled the purchaser to significant protections afforded by the laws of Colorado. *Dwyer*, 532 P.2d 725.

In the case at bar, Colorado real property is not the subject of the contract, the purchasers never traveled to Colorado to look at the property, no provisions of the disputed contract seem to implicate Colorado laws, and the Aircraft is not now, nor ever was, in Colorado. Thus, *Dwyer* is not persuasive in asserting specific jurisdiction over Defendants, rather, it cuts against doing so.

Plaintiff goes on to cite *Duckworth v. M.M. Cole Publishing Co.*, 38 Colo.App. 33, 552 P.2d 520 (1976) as holding that where a nonresident defendant initiated contact with the plaintiff at his residence in Colorado and solicited the resultant contract under which the parties intended the plaintiff to perform his portion in Colorado, a substantial connection had been created between the defendant and Colorado. *See* Plaintiff's Response to Motion to Dismiss, p. 21. However, the circumstances giving rise to jurisdiction in *Duckworth* can be differentiated from the circumstances in the present case. In *Duckworth*, the plaintiff was an author who would be writing manuscripts in Colorado, whereas the only event to actually occur in Colorado in the case at bar would be the sending and receiving of electronic communications, as well as Plaintiff receiving the benefit from the sale of the Aircraft. Another difference between *Duckworth* and the present case is that in *Duckworth*, the

court found it significant that defendant sent agents into Colorado to discuss problems relating to the interpretation of the contract, *Duckworth*, 552 P.2d 520, whereas in the present case, no such act is alleged. It must be noted that the Duckworth court was only able to find specific personal jurisdiction by looking at all of these factors taken together. In the case at bar, Defendants' contacts with Colorado are far less significant.

For all the reasons stated above, and given the totality of the circumstances, it would not comport with notions of due process to hale Defendants into a Colorado court on the basis of their attenuated and very limited contacts with Colorado, which do not rise to the level of minimum contacts as contemplated in the case law. Consequently, the Court will not exercise specific personal jurisdiction over Defendants in the case at bar.

### Conclusion

Plaintiff has failed to sustain its burden of making a prima facie case for either general or specific jurisdiction over Defendants in this Court. Plaintiff has shown that Defendants' subsidiaries maintain continuous and systematic contacts with Colorado, but has failed to show that Defendants exert control over the day to day activities of Defendants' subsidiaries, or that Defendants and its subsidiaries are otherwise entangled. Therefore, the Court cannot base general personal jurisdiction of Defendants on the activities of its subsidiaries and the Court does not have general personal jurisdiction over Defendants. Plaintiff has also failed to show that Defendants made the requisite minimum contacts with Colorado in connection with the sale of the Aircraft to satisfy due process concerns. Therefore, the Court cannot exercise specific personal jurisdiction over Defendants. For the aforementioned reasons, Defendant's Motion to Dismiss for lack of personal jurisdiction is

hereby **GRANTED**. Plaintiff's suit is hereby **DISMISSED**. Defendants' Motion to Dismiss for failure to state a claim is thereby **MOOT**.